STATE v. FRANCIS RAYMOND CROSBY.

151 N. W. (2d) 297.

May 26, 1967—No. 40,444.

*C. Paul Jones*, State Public Defender, and *Roberta K. Levy*, for appellant.

*Douglas M. Head*, Attorney General, *Gerard Snell*, Solicitor General, and *J. Jerome Kluck*, County Attorney, for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from a conviction of burglary under Minn. St. 609.58, subd. 2(3).

The facts may be summarized as follows:

On January 15, 1965, at about 12:30 a. m., a burglar alarm was set off at the LaHass Manufacturing Company in Dakota County and three officers responded to the call. Deputy Sheriffs Duane Zimmerman and Wallace Melville arrived first and Deputy Sheriff Norman Gould arrived shortly thereafter. They examined the premises and found nothing wrong in the main building, but a warehouse building had apparently been broken into. They found two doors of the warehouse had been forced; footprints inside the warehouse with snow clinging to them; and a large screwdriver lying beneath a truck outside the warehouse, which could have been used to break open the doors. A truck in the warehouse had its hood raised and its cab door ajar. A light snow of about one-half inch had fallen that evening, and they found three sets of footprints in the snow, two leading in one direction and one in the other. They followed the footprints, which led them to some railroad tracks. Following the tracks, they spotted two men coming toward them. When a flashlight carried by one of the officers was accidentally turned on, the men fled. The officers apprehended one of them and the other escaped, running through an area of weeds and underbrush. Officer Gould saw the man rise up from a patch of stickers and run across a swampy, open area. Gould attempted to stop him by firing at him, but was unable to do so. Gould followed his tracks for some distance but finally was unable to follow them further. During the search, the officers met a Jeanne Beaudette in a truck delivering newspapers in the area and asked her to call them if she saw anyone in the area. They later received a call that she had seen a man walking on Highway No. 13. They drove their car east on Highway No. 494 to Lexington Avenue, then north on Lexington to Highway No. 13, and spotted a figure walking on Highway No. 13 near what is known as Diamond Jim's nightclub. They apprehended this individual, who turned out to be the defendant, Francis Crosby. He was covered with stickers, including stickers in his hat, and he was wet from the knees down. It was about 5 a. m. when they apprehended Crosby. They asked him what he was doing there and he said that he had been drinking with some people in a tavern in the Selby-Dale area in St. Paul; that he went for a ride with

them, an argument ensued, and he was thrown from the car near the intersection of Highway No. 494 and Lexington Avenue. The officers drove him back to the point where he supposedly was thrown from the car, but he was unable to show the officers where it was.

Minn. St. 609.58, subd. 2, so far as material, reads:

"Whoever enters a building without the consent of the person in lawful possession, with intent to commit a crime therein, commits burglary * * *."

Subd. 2 also provides penalties for different classes of burglary, and clause (3) thereof reads as follows:

"In any other case, to imprisonment for not more than five years or to payment of a fine of not more than $5,000, or both, if the intent is to steal or commit a felony or gross misdemeanor or to imprisonment for not more than one year or to payment of a fine of not more than $1,000, or both, if the intent is to commit a misdemeanor."

The questions raised by this appeal are: (1) Is the evidence sufficient to warrant an inference that defendant intended to commit a crime under the provisions of this statute, if he was one of those who broke into the building? (2) Is the evidence sufficient to warrant an inference that defendant was one of the persons who broke into the building? (3) Did the court err in refusing to suppress the clothing taken from defendant after his arrest?

■ The case was tried to the court without a jury, defendant having waived in writing his right to a jury trial. The court found him guilty and sentenced him accordingly. It is well established that the findings of the trial court, after waiver of a jury trial by a defendant, are entitled to the same weight as a jury verdict. State v. Gardin, 251 Minn. 157, 86 N. W. (2d) 711. It is also established that our function in reviewing the evidence in a case of this kind is not to try the facts anew but to determine from the record as a whole whether the evidence permits the inference required to justify a conviction.[1]

---

[1] State v. Kline, 266 Minn. 372, 124 N. W. (2d) 416, certiorari denied, 376 U. S. 962, 84 S. Ct. 1124, 11 L. ed. (2d) 980.

■ The evidence in this case is purely circumstantial. That is nearly always true in a conviction for burglary. It is seldom that there are eye-witnesses. While the evidence must have some logical relevance to the fact of guilt and is insufficient if it merely raises a suspicion, we must view it realistically and if it does have relevance it has probative value and the weight to be given to it is for the trier of fact, whether that is a jury or the court after waiver of a jury.

We have carefully examined the transcript in this case and, while the evidence is not as convincing as it might be, we are satisfied that it does justify an inference that defendant was one of the people who broke into the building and was tracked from there until he was apprehended, partly by following his footprints in the snow and partly from other information obtained. His inability to satisfactorily explain his presence on the highway at five in the morning; the appearance of his clothes, with stickers that could reasonably have come from the sticker patch where the man was seen to have been running; his right foot, which was bleeding, showing that he must have traveled some distance; and other evidence that he was not there for any good purpose would permit an inference that he was the man the officers started tracking from the building broken into. Although defendant was apprehended some 10 miles from the scene of the break-in, over 4 hours had elapsed from the time of the break-in until defendant was apprehended. Therefore it is reasonable to assume that he could have traveled that distance in that time and that his appearance was the result of his flight from the scene.

More difficulty exists with respect to proof that, if defendant was one of the persons who broke into the building, he intended to commit a felony or a gross misdemeanor. The warehouse building that was broken into housed mainly heavy equipment consisting largely of trucks, hydraulic cylinders, power tailgates, tires, wheels, and things of that kind which were not easily removable on foot. There was no evidence that the people who broke into the warehouse had a car in the vicinity of the warehouse. However, the proof of intent to commit a crime in connection with proof of burglary is always one that must rest on a permissible inference from the facts proved. Here the evidence showed that a padlock and hasp on one of the doors had been forced. A large door

had been broken open. It is impossible to say with absolute certainty what the parties intended to do in the building, but it is reasonable to infer that they intended to take something or they would not have broken in. Whether they found what they expected to find in the building does not detract from the fact that they had an intent to commit a felony or gross misdemeanor; and if that intent existed it is sufficient, even though they did not actually find in the building what they expected to take.

With respect to the suppression of the evidence which defendant claims was unlawfully seized, about all that needs be said is that if the arrest was lawful, the seizure of the clothing was also lawful. The lawfulness of the arrest depends on the existence of probable cause that defendant was the person who had committed the crime. In view of all the circumstances, we think there was probable cause to make a lawful arrest; and, in view thereof, it was lawful to seize the clothing which defendant wore, which constituted the major proof that he was involved in the crime.

While the evidence is not too strong, we are convinced that a review of the entire record sustains the conviction and that there was no reversible error warranting a new trial.

Affirmed.