## STATE v. DALE BATES.

183 N. W. (2d) 287.

January 15, 1971—No. 42125.

*C. Paul Jones,* State Public Defender, and *Ronald L. Haskvitz,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, *James M. Kelley,* Assist-

ant Attorney General, *Carl E. Erickson,* County Attorney, and *Frederick J. Casey,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Otis, Peterson, Kelly, and Rosengren, JJ.

KELLY, JUSTICE.

This is an appeal from a conviction of burglary under Minn. St. 1967, § 609.58, subds. 1 and 2(3), entered pursuant to a jury's verdict of guilty.

On the morning of December 3, 1968, about 2:35 a. m., Officer Jack Musselman observed a broken window in the office of the Standard Lumber Company in Pequot Lakes, Minnesota. In answer to Musselman's call to the sheriff's office, two other officers, Con Badger and Ken Bjerkness, went to the lumber company.

The three officers entered a side door and found the contents of desk drawers dumped on the floor. Badger and Bjerkness went outside where they discovered two sets of footprints in the new snow under the broken window. One set of footprints had the inscription "B. F. Goodrich" on the heel and the second set was made by a plain-soled shoe.

From the broken window, the officers followed the two sets of tracks to various business places and finally to a local club where the tracks went around the building. There the officers found two window screens which had been removed, apparently after it had ceased snowing as there was no snow on the screens. At this point, the officers saw a single set of tracks made by ripple-soled shoes leading to a set of car tracks. The officers next followed the two sets of tracks to and along a highway for two or three blocks. Then the tracks veered and went behind several homes and out to a field where Bjerkness observed two persons running across the field. One of them, Donald Banks, stopped when Bjerkness fired a warning shot. Badger then followed the tracks of the other person to a point where he found defendant kneeling under a tree.

Upon returning to the lumberyard, the officers made a comparison of the footprint of Banks' right shoe with the set of footprints that had been traced to the point of Banks' apprehension. The shoe print matched perfectly. Defendant's shoes left flat tracks with no distinguishing marks, and those flat tracks were similar to the other set of footprints. Banks had $8.01 in mixed coins, three rubber bands, and a thumbtack in his pocket.

Musselman backtracked the trail in the field and found a crumpled $1 bill. The lumberyard manager testified that over $22 was missing including over $21 in coin and a $1 bill. Some of the money was removed from a small container kept in a large box which also contained loose rubber bands and thumbtacks.

Minn. St. 1967, § 609.58, subd. 2, so far as material reads:

"Whoever enters a building without the consent of the person in lawful possession, with intent to commit a crime therein, commits burglary * * *."

The issue raised on appeal is whether the evidence is sufficient to sustain the guilty verdict.

In State v. Crosby, 277 Minn. 22, 25, 151 N. W. (2d) 297, 299, this court made the following statement which aptly fits the instant case:

"The evidence in this case is purely circumstantial. That is nearly always true in a conviction for burglary. It is seldom that there are eyewitnesses. While the evidence must have some logical relevance to the fact of guilt and is insufficient if it merely raises a suspicion, we must view it realistically and if it does have relevance it has probative value and the weight to be given to it is for the trier of fact, whether that is a jury or the court after waiver of a jury."

From the evidence it clearly appears Banks was involved in the burglary of the lumber company's office with another person. Two sets of footprints in the fresh snow were found under the broken window in the office. Two officers followed the sets of footprints until they saw two men running across a field at 4

a. m. One set of footprints was followed to the point where defendant was found kneeling in the snow under a tree. Banks' shoe matched perfectly with one set of footprints discovered near the broken window and defendant's shoes were observed to correspond with the second set of footprints because they left a flat track with no distinguishing marks on either the sole or the heel of the print. The coins, rubber bands, and thumbtack in Banks' pocket when he was arrested all could have been taken from the lumber company. A $1 bill was missing from the office of the lumberyard and a crumpled $1 bill was found alongside the footprints in the field left by Banks and defendant.

Defendant admitted that he was with Banks on the evening of December 2, 1968, and that they were stranded in Pequot Lakes, about 30 miles from defendant's home, after two girls dropped them off. Defendant testified that he walked coatless around the town for several hours looking for a ride.

Defendant further testified that he separated from Banks during the evening of December 2 and from about 12:15 to 12:30 a. m. on December 3, he walked around town looking for Banks to see if he could get a ride; that he saw the "busted" window at the side of the lumberyard office and knew someone "obviously, probably" had broken into it; that he observed the tracks made by the ripple-soled shoes to where "they got into a car"; and that he followed the other tracks. His story that he was looking for Banks to get a ride is incredible for a man who was on parole from a burglary conviction and yet would pass by a broken window, knowing someone had probably broken into the building, and then would continue looking around business places at 3 or 4 in the morning to try to find a ride. Defendant said he ran when he sighted the officers because he was violating parole from a burglary conviction by associating with Banks.

From the evidence, it appears more than likely that Banks and defendant not only broke into the lumberyard office, but were looking for other places to burglarize. Their tracks encircling

the local club where screens had been removed would certainly indicate a burglary spree and a look for loot rather than a ride.

We have carefully read the transcript. From all the evidence it appears that defendant's story for the most part is unbelievable and that the evidence does justify an inference that he participated in the burglary. Rather obviously, if Banks had found a ride, he would not have been walking around closed business places in the middle of the night. Since there was no mention of any footprints leading up to the lumber company's office, it was reasonable for the jury to assume that Banks and defendant were inside the building while it was snowing and left when the snow ceased.

Although the state did not present any direct evidence that defendant entered the building, there is enough evidence that defendant was present and joined in the criminal activities. There is no distinction between principals and accessories. All participants concerned in the commission of the offense of burglary are deemed principals and are charged and punished accordingly.[1]

Affirmed.

---

[1] Under Minn. St. 609.05, subd. 1, "[a] person is criminally liable for a crime committed by another if he intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime."