**STATE of Minnesota, Respondent,**

v.

**John Michael FISLER, Appellant.**

**No. CX–85–588.**

Court of Appeals of Minnesota.

Oct. 1, 1985.

Review Denied Nov. 18, 1985.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey Co. Atty., Darrell C. Hill, Asst. Co. Atty., St. Paul, for respondent.

C. Paul Jones, Minn. State Public Defender, Mark F. Anderson, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and SEDGWICK and LANSING, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

John Fisler appeals from convictions of first-degree and second-degree intrafamilial sexual abuse in violation of Minn.Stat. §§ 609.3641, subds. 1(1) and 1(2)(e), and 609.3642, subd. 1(1) (1984) for sexually abusing his girlfriend's five-year-old son. Fisler contends the evidence is insufficient to sustain his conviction. We affirm.

## FACTS

John Fisler and W.S. lived together intermittently during 1982 and 1983. During this time Fisler developed a close relationship with W.S.'s son, and the child often called Fisler "Daddy." He frequently babysat for the child, and they occasionally showered together. W.S. testified that in February 1982 she saw Fisler fondling the child's penis as the child slept. She testified that at about the same time she returned home from shopping to find Fisler bathing the child; he admitted that he had severely spanked the child, leaving red marks all over his backside. After that, Fisler chained the apartment door whenever W.S. left him alone with the child. In February 1984 W.S. ended her relationship with Fisler.

In April 1984 the child urinated on a neighbor's child while playing at his apartment complex. When questioned, he told his mother that Fisler had sucked on his penis while they showered together. W.S. waited until the next day to question her son any further. He then told her that Fisler had touched and sucked his penis more than one time and told him not to tell his mother. He also said Fisler had worn W.S.'s wig and clothing and told the child that he was W.S.

W.S. telephoned Fisler and confronted him with her son's allegations. She testified that Fisler admitted to molesting the child by saying "Yeah, so what."

About five days later W.S. again questioned the child, who said that on one occasion when Fisler was babysitting, several people came to the apartment. The child said they tied him with a rope and hit him on his head. He described being sexually fondled by several people at the party and said a woman had sexual intercourse with him.

W.S. again called Fisler to question him about the child's allegations, and she recorded the conversation with a telephone recorder. Throughout most of the conversation, Fisler denied molesting the child, but admitted to washing the child's genitals. The conversation was transcribed:

W.S.: * * * I just want to know why you did that to my son, because it hurts me. And then I got to get to bed because I got a lot of things to do tomorrow.

JOHN FISLER: *Because I have problems.*

 * * * * * *

W.S.: There is no use. I know you have done other things than just washing his body. Okay? And I know that for a fact. I want to know why. Then that's it. I don't want to discuss this no more.

JOHN FISLER: *Because I have problems.*

W.S.: But my own son? You did molest my son, right?

JOHN FISLER: *Yeah. What I did to him was molesting him, yes.*

W.S.: But why my son? Why [him]? He was so little.

 * * * * * *

JOHN FISLER: I'll tell you—I'm going to tell you this right now: if anything more than what I told you happened to him by me, I was nuts; I didn't even know what the hell I was doing. I was crazy. I didn't even realize that I was doing it. And that didn't happen. I'll tell you that straight out. I'm not nuts, and I don't just do things and not even realize I'm doing them.

(Emphasis added).

W.S. contacted White Bear Lake police on May 1, 1984, and was referred to a Ramsey County social worker that same day. On May 2 she and her son were questioned by a White Bear Lake police officer. The child told police of events nearly identical to those he had described to his mother.

The defense theory is that the child made up the entire story and falsely accused Fisler to get revenge on him for terminating the familial relationship.[1] The defense also characterized the story as an attempt to gain attention from his mother while diverting attention away from his own misbehavior.

Joseph Klabunder, a friend of Fisler's, who the child claims was at the party, denied ever participating in an orgy. He testified that he had never visited W.S.'s apartment, nor had any sexual overtures been made to the child in his presence.

Fisler denied ever abusing the child either physically or sexually. He testified that the admissions in the taped phone conversation only meant that he had touched the child's genital area while washing. He said he did not mean to imply that he was fondling him for sexual purposes. He said that there were books in the apartment containing explicit sexual photographs which the child may have seen. He also testified that the child saw him and W.S. having sexual intercourse at least once during their relationship.

Fisler waived a jury trial. The trial court found him guilty of two counts of first-degree intrafamilial sexual abuse and one count of second-degree intrafamilial sexual abuse. The court sentenced Fisler to 43 months' imprisonment.

## ISSUE

Is the evidence sufficient to sustain Fisler's convictions for first and second-degree intrafamilial sexual abuse?

## ANALYSIS

Fisler contends the evidence is insufficient to support his convictions. First-degree intrafamilial sexual abuse is defined as sexual penetration of a child with whom the actor has a familial relationship, *see* Minn.Stat. § 609.3641, subd. 1(1) (1981), or multiple acts of penetration committed over an extended period of time, *see id.* subd. 1(2)(e). Second-degree intrafamilial sexual abuse is defined as sexual contact with a child with whom the actor has a familial relationship. Minn.Stat. § 609.3642 (1981).

The trial court found the child to be a credible witness. The evidence shows that the child told the same story to police, his mother, prosecutors and the judge over a four to five month period. He gave a detailed description of what occurred. In fact, Fisler himself testified that the child was not particularly imaginative or prone to playing make-believe. Furthermore, there is no support in the record for Fisler's suggestion that the child saw pornographic books in his mother's apartment.

■ Fisler also argues that the evidence is insufficient because there was no corroborating evidence. *See, e.g., State v. Ani,* 257 N.W.2d 699 (Minn.1977). There is no statutory or constitutional requirement for corroboration of a complainant's testimony in a prosecution for intrafamilial sexual abuse. In fact, Minn.Stat. § 609.347, subd. 1 (1984), specifically eliminates any need for corroborating evidence in prosecutions for criminal sexual conduct. Appellant contends that § 609.347, subd. 1, does not apply to intrafamilial sexual abuse prosecutions, but this court held otherwise in *State v. Eggert,* 358 N.W.2d 156, 162 (Minn.Ct. App.1984).

■ In any event, there is evidence which tends to corroborate the child's testimony. His mother said that she personally observed one incident of sexual contact between her son and Fisler. Furthermore, Fisler admitted in the taped conversation

---

1. The trial court ruled that evidence regarding Fisler's sexual history (involving sadomasochism, transvestism and bisexuality) was inadmissible unless Fisler put his character in evidence.

that he abused the child because he had "problems."

An appellate court reviewing the claim of insufficiency of evidence is required to interpret the evidence in the light most favorable to the verdict and assume the jury disbelieved any testimony conflicting with the result reached. *State v. Parker*, 353 N.W.2d 122, 127 (Minn.1984); *see State v. Heidelberger*, 353 N.W.2d 582, 591 (Minn.Ct.App.1984), *pet. for review denied* (Minn. Sept. 12, 1984). A trial judge's decision is given the same weight as a jury verdict. *State v. Gardin*, 251 Minn. 157, 161, 86 N.W.2d 711, 715 (1957).

This appeal can be reduced to Fisler's contention that the trial court should not have believed W.S. and her child. However, credibility determinations are for the finder of fact and should not be disturbed on appeal. *State v. Best*, 370 N.W.2d 691 (Minn.Ct.App.1985); *DeMars v. State*, 352 N.W.2d 13, 16 (Minn.1984). The evidence is sufficient to sustain the convictions.

## DECISION

The evidence is sufficient to sustain appellant's convictions for first-degree and second-degree intrafamilial sexual abuse.

Affirmed.