*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1777**

State of Minnesota,
Respondent,

vs.

Joeseph Norman Carlson,
Appellant.

**Filed September 14, 2015
Affirmed
Kirk, Judge**

Hennepin County District Court
File No. 27-CR-13-39036

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Lydia Villalva Lijó, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Kirk, Judge; and Reilly, Judge.

UNPUBLISHED OPINION

**KIRK**, Judge

On appeal from his conviction of third-degree criminal sexual conduct, appellant Joeseph Norman Carlson argues that there is insufficient evidence to support the conviction. We affirm.

**FACTS**

Following investigation of a sexual assault, respondent State of Minnesota charged appellant with third-degree criminal sexual conduct, either acting alone or aiding and abetting another. After a two-day court trial, the district court found appellant guilty as charged. The evidence presented at the court trial is summarized below.

On July 30, 2013, Spidel Wayne Browder, a woman identified as J.H.B., and appellant met in downtown Minneapolis and walked around the Loring Greenway area while drinking from a shared vodka bottle. At about 7:00 or 8:00 p.m., S.V. and her then-boyfriend, A.S., were walking in the area and noticed the group. Browder was sitting or leaning against a wall, appellant was standing, and J.H.B. was positioned in between them. J.H.B. was bent over more than 90 degrees from her waist, towards the wall, and appellant was holding her by the waist. A.S. described her hair as "covering her face" and "on or near" Browder's "lap." Her skirt was either pushed up or down. S.V. described J.H.B.'s head as in Browder's "lap," and noticed that appellant's pants were "partially down," exposing his skin. A.S. thought J.H.B. was being held up due to "the angle of her legs and how heavily her head was resting forward." The couple heard J.H.B. moan as if she was ill or intoxicated. Appellant saw the couple and waved one

2

hand, saying something to the effect of "sorry, don't worry, sorry, sorry," or "you can go on, nothing is going on here." Concerned, the couple called 911.

At about the same time, C.J., a local resident, came upon the scene. He described J.H.B. as "unconscious," because she was "[v]ery limp, head down, hair down, immobile," and her arms were "dangling." According to C.J., J.H.B. was "resting" on Browder's chest or stomach area, and appellant was "basically holding her up from behind." C.J. indicated that appellant's pants were down to "thigh length," exposing his underwear, and that J.H.B.'s "pants were down." Appellant was "laughing it off" and nodded to C.J. When C.J. looked back after walking past them, he saw appellant make a thrusting motion as if he was engaged in sexual intercourse with J.H.B. The three people appeared intoxicated. C.J. also called the police.

Two Minneapolis police officers responded to the witnesses' 911 calls. When they arrived on the scene, appellant fled, and one officer gave chase, but failed to apprehend him. When the other officer first looked at J.H.B., he thought she was dead. He noted that her sundress was "hiked up on her thighs," that her ankles and knees were dirty and scraped, and "that she was not wearing any underpants." The first officer similarly observed that J.H.B.'s "dress was pulled all the way up to where you could almost see her genitals." The officers located a vodka bottle 10 to 15 yards away.

After being transported to a hospital, J.H.B. underwent a sexual assault exam. Tests of J.H.B.'s blood and urine showed a high alcohol concentration. At 11:00 p.m. on July 30, DNA samples were collected from Browder. The next day, a law enforcement officer collected a DNA sample from appellant. Appellant denied being downtown the

3

previous day, but admitted to being friends with J.H.B. and having kissed her on a previous occasion.

The Bureau of Criminal Apprehension analyzed the samples. Amylase, an enzyme found in saliva and feces, was found on samples from J.H.B.'s vaginal and perineal region. J.H.B.'s perineal swab contained a mixture of the DNA of two or more men, and Browder and appellant could not be excluded from being possible contributors. Browder's penile swab contained a mixture of the DNA of two or more individuals, one of which matched J.H.B. J.H.B.'s DNA was also present on Browder's right- and left-hand swabs. The vodka bottle contained a mixture of DNA from three or more individuals. J.H.B., Browder, and appellant could not be excluded as possible contributors.

J.H.B. testified that she and a female friend met up with Browder and appellant between approximately 6:00 and 6:30 p.m. on July 30. J.H.B. did not remember the incident that the three witnesses described seeing in Loring Greenway. She testified that, during the period of the evening that she remembers, she did not engage in any sexual activity with either Browder or appellant. She also did not indicate to either of them that she wanted such activity, nor give either consent to touch her in a sexual manner.

Appellant testified that he joined Browder, J.H.B., and others between approximately 4:30 and 5:30 p.m. on July 30. As the group was walking around, J.H.B. was kissing and flirting with Browder, and they were twice out of appellant's sight. At one point, J.H.B. kissed appellant. Appellant explained that he was behind J.H.B. during the time in question because she fell and he was helping her up. He denied having any

4

sort of sexual contact with J.H.B. He stated that his pants were sagging "down past [his] butt" because he routinely wears them in that fashion. Appellant explained that he ran when law enforcement arrived because he had a felony warrant. He admitted that he initially lied to law enforcement when he denied having been with Browder and J.H.B. that night.

On June 16, the district court found appellant guilty of third-degree criminal sexual conduct. The court found that appellant aided Browder's sexual penetration of J.H.B. by holding her up, which she could not accomplish alone due to her incapacitation. It explained:

> . . . [Appellant] was holding [J.H.B.] up for the purpose of enabling Mr. Browder to sexually penetrate her. Here, [J.H.B.] was at more than a 90 degree angle—an uncomfortable position for most people, especially when inebriated—and her face was in Mr. Browder's lap where his genitalia is located. Moreover, [J.H.B.]'s DNA was found on Mr. Browder's penis. Under the circumstances, the only logical explanation for this is that Mr. Browder was sexually penetrating [J.H.B.]'s mouth, and that [Appellant] was helping him do it. Accordingly, the Court finds that [Appellant] aided Mr. Browder by angling and holding J.H.B. so that Mr. Browder could put his penis in [J.H.B.]'s mouth while [Appellant] steadied J.H.B.

This appeal follows.

## D E C I S I O N

To prove the commission of criminal sexual conduct in the third degree in this case, the state needed to prove that appellant: (1) engaged in sexual penetration with J.H.B., or that he intentionally aided, advised, hired, counseled or conspired with or otherwise procured another to sexually penetrate J.H.B.; and (2) knew or had reason to

5

know that J.H.B. was "mentally impaired, mentally incapacitated, or physically helpless." *See* Minn. Stat. §§ 609.344, subd. 1(d), 609.05, subd. 1 (2012). "Sexual penetration" includes fellatio. Minn. Stat. § 609.341, subd. 12(1) (2012).

A defendant's presence intentionally aids another in committing a crime when: (1) the defendant knew that his alleged accomplice was going to commit a crime; and (2) the defendant "intended his presence or actions to further the commission of that crime." *State v. Mahkuk*, 736 N.W.2d 675, 682 (Minn. 2007). "Presence, companionship, and conduct before and after an offense are circumstances from which a person's criminal intent may be inferred." *State v. Russell*, 503 N.W.2d 110, 114 (Minn. 1993). The state does not need to prove that the defendant's presence actually aided in the commission of the crime. *State v. Taylor*, ___ N.W.2d ___, ___, 2015 WL 5081131, at *10 (Minn. Aug. 26, 2015).

In considering a claim of insufficient evidence, this court conducts a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the verdict, is sufficient to allow the fact-finder to reach its verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We must assume that "the [fact-finder] believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). When the district court is the fact-finder, rather than a jury, its findings are entitled to the same weight as a jury verdict. *State v. Gardin*, 251 Minn. 157, 161, 86 N.W.2d 711, 715 (1957). Ordinarily, this court will not disturb the verdict if the fact-finder, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably

6

conclude that the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

In reviewing a conviction based on circumstantial evidence, however, we apply a two-step analysis. *State v. Hanson*, 800 N.W.2d 618, 622 (Minn. 2011). Direct evidence is "evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption," while circumstantial evidence is "evidence based on inference and not on personal knowledge or observation." *Bernhardt*, 684 N.W.2d at 477 n.11 (quotation marks and alterations omitted) (quoting Black's Law Dictionary 595-96 (8th ed. 2004)).

First, we "identify the circumstances proved," deferring to the fact-finder's acceptance of proof of those circumstances and rejection of evidence conflicting with those circumstances. *State v. Silvernail*, 831 N.W.2d 594, 598-99 (Minn. 2013). "We recognize that the trier of fact is in the best position to determine credibility and weigh the evidence." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010). In the second step, we "examine independently the reasonableness of all inferences that might be drawn from the circumstances proved" in order to "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Silvernail*, 831 N.W.2d at 599 (quotations omitted). We do not defer to the fact-finder's choice between reasonable inferences. *Id.* "Circumstantial evidence must form a complete chain that, as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *Hanson*, 800 N.W.2d at 622.

7

Appellant asserts that there is insufficient evidence to support his conviction "because there was no evidence that [he] held J.H.B. so that Browder could penetrate her and no evidence that Browder was engaged in that particular act while [appellant] held J.H.B." He argues that there was no testimony that Browder's pants were down or unzipped, that Browder's penis was exposed, or that "J.H.B.'s head was in Browder's crotch," but rather that it was near his lap, chest or stomach. He contends that the sexual penetration could have occurred at another time, as Browder and J.H.B. were already together when he arrived that evening, they were flirting, and they disappeared from his view "several times." We disagree.

The fact-finder is the exclusive judge of witness credibility and the weight to be given a witness's testimony. *State v. Mems*, 708 N.W.2d 526, 531 (Minn. 2006). "[A] conviction can rest on the uncorroborated testimony of [even] a single credible witness." *State v. Foreman*, 680 N.W.2d 536, 539 (Minn. 2004) (quotation omitted). The district court made numerous findings after hearing the testimony, including that: (1) J.H.B. seemed unable to stand on her own; (2) her head "rested heavily forward and her face was directly in" Browder's "lap"; (3) J.H.B.'s skirt was pulled up and she was not wearing underwear; (4) appellant had exposed skin at or below his waist; (5) C.J. saw appellant "gyrating and pulling his pants up"; and (6) J.H.B.'s DNA was found on Browder's penis. The circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt.

While it is true that no witness saw Browder sexually penetrate J.H.B. while appellant held her up, the record reflects that three witnesses saw J.H.B.'s head in the

8

immediate vicinity of Browder's penis, and J.H.B.'s DNA was found on his penis. The fact that appellant was facing towards Browder as he held J.H.B. up, as appellant engaged in motions suggestive of sexual activity with J.H.B., is evidence that he was aware of, and assisting with, Browder's penetration of J.H.B.

In light of the strong evidence of sexual penetration observed by the three witnesses, appellant's assertion that the penetration may have occurred at another time is not a rational hypothesis. Further, J.H.B.'s testimony indicates that she met up with Browder and appellant at the same time. Although appellant testified that, when he joined J.H.B. and Browder, they were already together and that they twice left his sight, he harmed his credibility by lying to law enforcement about his presence that evening. *See State v. Jones*, 753 N.W.2d 677, 693 (Minn. 2008) (noting that defendant's "credibility was seriously undermined by the inconsistent statements he made to police and his admission that he perjured himself in the first trial"). Appellant's flight from the officers also suggests cognizance of guilt. *State v. McDaniel*, 777 N.W.2d 739, 747 (Minn. 2010) (stating that "evidence of flight suggests consciousness of guilt" (quotation omitted)). Ultimately, it was the district court's choice whether to credit appellant's testimony. *See Mems*, 708 N.W.2d at 531.

In addition, appellant notes that a jury found Browder guilty of only aiding and abetting third-degree criminal sexual conduct. *See State v. Browder*, No. A14-0595, 2015 WL 853446, at *2 (Minn. App. Mar. 2, 2015) (affirming Browder's conviction for aiding and abetting third-degree criminal sexual conduct by appellant), *review denied* (Minn. May 19, 2015). However, this does not render appellant's conviction for aiding

9

and abetting Browder improper, as the doctrine of nonmutual collateral estoppel may not be used by a criminal defendant. *State v. Cegon*, 309 N.W.2d 313, 314 (Minn. 1981) (citing *Standefer v. United States*, 447 U.S. 10, 100 S. Ct. 1999 (1980)).

In sum, the evidence forms a complete chain that, as a whole, leads so directly to appellant's guilt as to exclude beyond a reasonable doubt any reasonable inference other than guilt. *See Hanson*, 800 N.W.2d at 622. Therefore, the evidence is sufficient to allow the district court to reach its verdict. *Id.*

**Affirmed.**