*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0685**

State of Minnesota,
Respondent,

vs.

Mark Anthony Givins,
Appellant.

**Filed April 11, 2016
Affirmed
Kirk, Judge**

Ramsey County District Court
File No. 62-CR-14-7395

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael W. Kunkel, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Kirk, Judge; and Jesson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

Appellant challenges his burglary conviction, arguing that the evidence presented at the court trial was insufficient to support the conviction. We affirm.

# FACTS

The Town and Country Club (TCC) is a St. Paul business that operates a golf course, restaurant, tennis club, and pool and spa facilities. The TCC's main clubhouse has two parking lots. The lot at the front of the building is closely situated to the general public entrance. The lot at the rear of the building is adjacent to the employee entrances, which are locked.

One morning in September 2014, appellant Mark Anthony Givins and C.L. parked their vehicle in the TCC's rear parking lot. They exited the vehicle and approached one of the employee entrances. Apparently finding it locked, they immediately approached a recessed area containing another employee entrance and a garage. The garage contains another door to the building. At trial, the TCC's building engineer testified that the garage door was open that morning.

Surveillance video footage from inside the TCC shows the two men walking down a hallway towards the building engineer's office. The building engineer surmised that appellant and C.L. entered the building through the open garage door.

Video footage shows that, when appellant and C.L. left the clubhouse minutes later, appellant was carrying a blue jacket that he did not appear to have when entering the building. Later that morning, the building engineer found that his blue jacket was missing from his office. Early that afternoon, a police officer stopped a vehicle in which appellant and C.L. were riding. Appellant was wearing the missing jacket and admitted to taking it from the TCC.

2

Respondent State of Minnesota charged appellant with third-degree burglary, in violation of Minn. Stat. § 609.582, subd. 3 (2014). Following a court trial, the district court found appellant guilty. This appeal follows.

**D E C I S I O N**

**I.      The evidence at trial was sufficient to prove that appellant exceeded the scope of consent given to the general public at the time he stole the jacket.**

Appellant concedes that he entered the TCC and, while inside, stole the jacket. However, he implicitly argues that the district court failed to make a necessary finding that he exceeded the scope of consent to enter the TCC given to the general public, and that the state failed to prove it.

In considering a claim of insufficient evidence, we conduct a "painstaking analysis of the record" to determine whether the evidence, when viewed in the light most favorable to the verdict, is sufficient to allow the fact-finder to reach its verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). When the district court is the fact-finder, its findings are entitled to the same weight as a jury verdict. *State v. Gardin*, 251 Minn. 157, 161, 86 N.W.2d 711, 715 (1957). We must assume that "the [fact-finder] believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). We will not disturb the verdict if the fact-finder, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

Minn. Stat. § 609.582, subd. 3, provides, in pertinent part:

> Whoever enters a building without consent and with intent to steal or commit any felony or gross misdemeanor while in the building, or enters a building without consent and steals or commits a felony or gross misdemeanor while in the building . . . commits burglary in the third degree . . . .

Generally, when the building in question is open to the public, a person who enters it "does so with consent except when consent was expressly withdrawn before entry." Minn. Stat. § 609.581, subd. 4 (2014). However, an entrant may have consent to enter one part of a building but not another. *See State v. McDonald*, 346 N.W.2d 351, 352 (Minn. 1984). In *McDonald*, the defendant "entered a drugstore during business hours but at a time when the pharmacy was closed and, without consent, entered a closed storage room that was off limits to the general public and from there tried to gain access to the locked pharmacy for the purpose of stealing controlled substances." *Id.* In affirming his conviction, the supreme court held that there was no burglary when the defendant entered the "part of the store that was open to the public," but "the burglary was complete once defendant exceeded the scope of the consent given him and other members of the public and entered the storage room with intent to gain access to the locked pharmacy from there." *Id.*

Contrary to appellant's implied assertion, the district court's conclusions that he lacked the TCC's consent to enter through the rear of the clubhouse and into the building engineer's office are essentially findings that he exceeded the scope of consent given to the public when he took the jacket. The statutory language prohibits entry "without consent," and the caselaw that describes conduct that exceeds the scope of consent simply elaborates on this element where the situation involves an establishment open to the public. *Id.* The

4

statute does not require that the district court use those specific words in concluding that there was no consent.

When viewed in the light most favorable to the verdict, the evidence is sufficient to support the district court's finding that appellant lacked consent to enter the TCC through a rear entrance and, more specifically, to enter the building engineer's office. *Webb*, 440 N.W.2d at 430. There is abundant evidence that the general public was not welcome to enter the clubhouse through its rear entrances. The rear entrance doors were locked and accessible only with a keycard. There was a prominent sign at one rear entrance directed at employees. Further, the area on the other side of these entrances, including the building engineer's office, was clearly designated for employees only. The building engineer testified as such, and the hallway area contained racks of table linens, the employee breakroom, an employee timeclock, and labeled employee restrooms. In addition, the building engineer's office had the trappings of a typical office and did not appear to be an area for the general public. While there is no evidence in the record that the TCC was not open for business at the time in question or that it ever expressly revoked consent for appellant to enter or remain in the building at large, the state proved beyond a reasonable doubt that appellant "exceeded the scope of the consent given [to] him and other members of the public" at the time he took the jacket by being in an area for employees only. *McDonald*, 346 N.W.2d at 352.

**II.    Knowledge of lack of consent is an element of burglary, and the evidence at trial was sufficient to prove this knowledge.**

Appellant argues that the state needed to prove that he knew he exceeded the scope of consent that the TCC gave to the general public and that the circumstantial evidence in the record was insufficient to prove this element of the burglary offense. The state contends that appellant failed to assert a knowledge requirement to the district court, and therefore, appellate review should be limited to whether the district court plainly erred in failing to impose one. *See State v. Vance*, 734 N.W.2d 650, 654-55 (Minn. 2007), *overruled on other grounds by State v. Fleck*, 810 N.W.2d 303 (Minn. 2012). That is not the case. During closing argument, appellant's counsel essentially asserted that the district court could only find appellant guilty if he knew or should have known that he lacked consent to enter the TCC as he did. Therefore, appellant did not waive this argument.

Minn. Stat. § 609.582, subd. 3, does not contain language indicating that the entrant must know that he lacks consent to enter the building. However, misdemeanor trespass in violation of Minn. Stat. § 609.605, subd. 1(b)(4) (2014), which is a lesser-included offense of burglary, requires that one "intentionally" "occupies or enters the . . . building of another, without claim of right or consent of the owner." *See State v. Roberts*, 350 N.W.2d 448, 450-51 (Minn. App. 1984); Minn. Stat. § 609.04, subd. 1(4) ("An included offense may be . . . [a] crime necessarily proved if the crime charged were proved.").

> "Intentionally" means that the actor either has a purpose to do the thing or cause the result specified or believes that the act performed by the actor, if successful, will cause that result. In addition . . . the actor must have knowledge of those facts which are necessary to make the actor's conduct criminal and which are set forth after the word "intentionally."

6

Minn. Stat. § 609.02, subd. 9(3) (2014).  Therefore, burglary also requires knowledge of lack of consent.

Knowledge is usually proved through circumstantial evidence.  *See State v. Mauer*, 741 N.W.2d 107, 115 (Minn. 2007) ("We have long held that the proof of knowledge may be made by circumstantial evidence.").  In reviewing a conviction based on circumstantial evidence, we apply a two-step analysis.  *State v. Hanson*, 800 N.W.2d 618, 622 (Minn. 2011).  First, we "identify the circumstances proved," deferring to the fact-finder's acceptance of proof of those circumstances and rejection of evidence that conflicted with those circumstances.  *State v. Silvernail*, 831 N.W.2d 594, 598–99 (Minn. 2013).  "We recognize that the trier of fact is in the best position to determine credibility and weigh the evidence."  *State v. Al–Naseer*, 788 N.W.2d 469, 473 (Minn. 2010).  In the second step, we "examine independently the reasonableness of all inferences that might be drawn from the circumstances proved" to "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt."  *Silvernail*, 831 N.W.2d at 599 (quotations omitted).

We do not defer to the fact-finder's choice between reasonable inferences.  *Id.* "Circumstantial evidence must form a complete chain that, as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt."  *Hanson*, 800 N.W.2d at 622 (quotation omitted).

Here, while the district court did not explicitly find that appellant knew that he lacked consent, that finding is strongly implicit in its decision.  For example, the district

7

court found that appellant's explanation that he was looking for work at the TCC was "not credible," noting that the rear entrance was locked and that appellant did not have a scheduled job interview, enter through the main entrance, or make any formal inquiry about work.

We find that the circumstances proved are consistent with appellant knowing that he lacked consent to enter the TCC and the building engineer's office and inconsistent with any other rational hypothesis. *See Silvernail*, 831 N.W.2d at 599. The trial record contains considerable evidence that appellant knew that consent was absent. For example, appellant tried to open one door at the rear of the TCC and found it to be locked. Rather than using the buzzer at that door, he moved on to a nearby entry area. There is strong evidence that he entered through a garage door, which is obviously meant for vehicles, not people. Although appellant later claimed to be looking for work, he and C.L. moved quickly from the parking lot to the building, up and down the hallway, and back to the parking lot, without appearing to inquire about work.

Viewing the evidence in the light most favorable to the verdict, the evidence presented at the trial and the district court's findings are sufficient to support appellant's conviction.

**Affirmed.**