## STATE v. LUTHER DAVID WITTE.

158 N. W. (2d) 266.

April 11, 1968—No. 40,788.

*C. Paul Jones,* State Public Defender, *Robert E. Oliphant,* Assistant State Public Defender, and *Paul Kunert,* for appellant.

*Douglas M. Head,* Attorney General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, Sheran, and Peterson, JJ.

Rogosheske, Justice.

On July 4, 1966, defendant was arrested and thereafter charged with the crime of burglary in violation of Minn. St. 609.58, subd. 2, which provides:

"Whoever enters a building without the consent of the person in lawful possession, *with intent to commit a crime therein,* commits burglary * * *." (Italics supplied.)

Upon his plea of not guilty and while represented by counsel of his own selection, he was tried by the court, having waived his right to a jury trial. The trial judge found defendant guilty and, following presentence investigation, defendant was sentenced to imprisonment on November 14, 1966, for a term of not to exceed 2 years.[1]

On this appeal from the judgment of conviction, defendant claims that the evidence was insufficient to prove his guilt beyond a reasonable doubt and that his representation by counsel at trial was inadequate.

The specific charge was that defendant unlawfully entered the premises of Bill Boyer Ford, Inc., on July 4, 1966, with intent to commit theft. Protesting his innocence, defendant persists in denying that he entered the garage building or intended to steal. He testified that two companions [2] had been riding around with him in his automobile; that he had stopped because one suggested they get out and "stretch our legs"; that in response to a "bet" he climbed a telephone pole adjacent to the building and succeeded in getting up on the roof of a series of interconnected buildings, one of which was used as a parking area. He said he then tested two doors, found them locked, "squatted" in the shade of a parked car on the parking ramp, smoked a small cigar, and returned via the telephone pole. In direct conflict, the state produced two eye-

---

[1] The court could have imposed a 5-year sentence but limited the term and also gave defendant credit for the time he spent in jail from July 4 and ordered that the 2-year sentence be served concurrently with a prior armed-robbery sentence, probation of which had been revoked.

[2] Both were convicted of loitering with intent to commit a crime.

witnesses whose third-floor apartment overlooked the roof of the building. Both witnesses, a husband and wife, testified that at about 2:45 p. m., with the weather clear, they observed defendant walk upon the roof, step down the "four foot dropoff" to the parking ramp, try the service door, and then raise an overhead door and enter the building. After they called the police, they watched defendant come out of the building. They estimated he was inside it about 20 minutes. Two police officers arrived and saw defendant upon the roof and climb down the pole, whereupon they arrested him and took a 6-inch screwdriver from his person.

Describing their investigation, the officers further testified to finding a broken windowpane near the lock of the overhead door with broken glass lying on the outside rather than on the inside of the door. They found no evidence that anything was removed from the building. Both the manager of the Ford agency and the owner testified that they found nothing taken from the premises but, because of papers being strewn about, did see indications that the owner's desk, file cabinet, and two brief cases had been ransacked.

As clearly indicated by the brief summary of the evidence, there is direct evidence of an unauthorized entry. Defendant's argument that the windowpane must have been broken from the inside hardly diminishes the probative force of this direct proof. However, the evidence of an intent to commit a theft—as is usual in this type of offense—is wholly circumstantial. The element of intent to commit a crime makes the offense a serious one. Yet intent is normally a purely subjective element, requiring the prosecution to rely on circumstantial evidence. As we said in State v. Crosby, 277 Minn. 22, 25, 151 N. W. (2d) 297, 300:

"* * * [T]he proof of intent to commit a crime in connection with proof of burglary is always one that must rest on a permissible inference from the facts proved."

With direct proof of an unauthorized entry, the fact that nothing was taken from the building does not destroy the reasonableness of an inference that at the time of entry an intent to commit theft in fact existed. Where, as here, the circumstantial evidence considered as a whole raises more than a mere suspicion and the sum of the inferences reasonably to be drawn from the circumstances is consistent with guilt and inconsistent

with any rational belief of innocence, the evidence is sufficient to permit an inference justifying a finding of the required intent. This conclusion by the trial judge is further supported by the disclosure in the record of defendant's admission that "if he had gone inside and found any money, he probably would have taken it." State v. Dillon, 279 Minn. 105, 155 N. W. (2d) 453.

We find no merit in defendant's claim of inadequate representation, for the exceptional circumstances which must appear to support a finding of inadequate counsel when the defendant is represented by an attorney of his own choosing are not present here. State v. Lindstrom, 180 Minn. 435, 231 N. W. 12. Indeed, defendant's assertion is refuted by the record, for it and the sentence imposed bespeak not only competent but skillful representation. State v. Bailey, 270 Minn. 64, 132 N. W. (2d) 720; State v. Waldron, 273 Minn. 57, 139 N. W. (2d) 785.

Affirmed.