**STATE of Minnesota, Respondent,**

v.

**Peter Allen COLVIN, Petitioner, Appellant.**

No. C4–00–1365.

Supreme Court of Minnesota.

June 13, 2002.

Lawrence Hammerling, Deputy State Public Defender, Davi Axelson, Asst. State Public Defender, Minneapolis for appellant.

Mike Hatch, Attorney General, Robert A. Stanich, Asst. Attorney General, St. Paul, Raymond F. Schmitz, Olmsted County Attorney, Rochester, for respondent.

## OPINION

LANCASTER, Justice.

This appeal presents the question of whether a criminal defendant's violation of an order for protection (OFP) is sufficient to establish first-degree burglary, absent the commission of or intent to commit a crime other than a violation of the order for protection.

Peter Allen Colvin (Colvin) was charged by complaint with one count of first-degree burglary. The charge arose from Colvin's February 25, 1999, illegal entry into the home of his ex-wife, Michelle Colvin. Colvin moved to dismiss the charge, arguing that the violation of an OFP could not form the basis of a burglary charge because burglary required commission of or intent to commit a crime other than illegal entry. The district court denied the motion. The burglary charge was subsequently submitted to the district court on stipulated facts, and the court found Colvin guilty of first-degree burglary. The court of appeals affirmed Colvin's conviction, concluding that because the OFP violation, unlike trespass, is not entirely encompassed by the illegal entry, an OFP violation alone can satisfy the intent to commit an independent crime requirement of burglary. We reverse.

Michelle Colvin applied for and obtained an emergency (ex parte) OFP pursuant to Minn.Stat. § 518B.01 (2000), against her ex-husband, Peter Colvin, on October 14, 1998. The order, which was valid for one year and was served on Colvin on the date

obtained, provided that "Respondent [Colvin] must not enter Petitioner's [Michelle Colvin's] residence located at [address] or any future residence. Respondent must not enter or stay at Petitioner's residence for any reason, even if invited to do so." The order also provided that Colvin could not commit acts of domestic abuse against Michelle Colvin, have any contact with her, or enter or call her workplace.

On February 25, 1999, Michelle Colvin telephoned the Rochester Police Department to report a violation of the OFP. According to the police report, a fifteen-year-old girl, A.M.E., who was staying with Michelle Colvin, returned to their home in Rochester that evening at 6:10 p.m. A.M.E. found Colvin inside the residence, watching television and drinking a beer. A.M.E. asked Colvin to leave, and he complied. She then telephoned Michelle Colvin at work and left a message about Colvin's presence in the home. The police officer responding to Michelle Colvin's call later that evening found no sign of forced entry. Michelle Colvin reported to the officer that she believed Colvin entered the residence through a window in the dining area because the blinds were disturbed and because that window would not lock.

As a result of the events of February 25, 1999, Colvin was charged with first-degree burglary in violation of Minn.Stat. § 609.582, subd. 1(a) (2000), and violation of an OFP in violation of Minn.Stat. § 518B.01, subd. 14(d)(1). Because Colvin had been convicted of two prior order for protection violations in the past five years, this OFP violation was charged at the felony level. Colvin brought a motion to dismiss the burglary charge, arguing that violation of an OFP could not form the basis of a burglary charge because burglary required commission of or intent to commit a crime other than illegal entry.

At the July 29, 1999, pretrial hearing on Colvin's motion, the parties stipulated to the facts as represented in the police report and complaint and further agreed that there was no allegation that Colvin committed or attempted to commit any crime independent of the OFP violation.

After the district court denied Colvin's motion on September 29, 1999, the parties reached a plea agreement that included dismissal of the OFP violation and resolution of other unrelated charges. Under that agreement, the burglary charge was submitted to the court on the same stipulated facts as agreed to in the pretrial hearing. On April 10, 2000, the district court found Colvin guilty of first-degree burglary. The court made written findings of guilt, specifically finding: That Colvin entered a building; that he did so without consent; that the building was a residence; that another person, not an accomplice, was present in the building during some of the time Colvin was present; and that in entering the building Colvin intended to commit and did commit the crime of violating the valid October 14, 1998, OFP.

Colvin appealed, arguing that intent to violate an OFP cannot satisfy the element of intent to commit a crime while in the building. The court of appeals affirmed the district court, holding that violation of an OFP, unlike trespass, satisfies the independent crime element of first-degree burglary. Colvin additionally argued that the evidence in the stipulated facts was insufficient to prove intent to violate the OFP. The court of appeals rejected this argument as well.

■ On appeal to this court, Colvin raises only the question of whether intent to violate an OFP is sufficient to establish burglary, absent the commission of or intent to commit a crime other than the OFP violation.

■ Construction of a criminal statute is a question of law subject to de novo review. *State v. Murphy,* 545 N.W.2d 909, 914 (Minn.1996). A statute must be construed according to its plain language. Minn.Stat. § 645.16 (2000). If ambiguous, the intent of the legislature controls. *Id.* A rule of strict construction applies to penal statutes, and all reasonable doubt concerning legislative intent should be resolved in favor of the defendant. *State v. Olson,* 325 N.W.2d 13, 19 (Minn.1982) (citing *State v. Haas,* 280 Minn. 197, 200–01, 159 N.W.2d 118, 121 (1968)). If construction of a statute is uncertain, a statute may not be interpreted to create criminal offenses that the legislature did not contemplate. *State v. Soto,* 378 N.W.2d 625, 627–28 (Minn.1985). "The rule of strict construction of criminal statutes is essential to guard against the creation of criminal offenses outside the contemplation of the legislature, under the guise of 'judicial construction.' " *Id.* at 628 (quoting *State v. Mims,* 26 Minn. 191, 192, 2 N.W. 492, 492 (1879)); *see also Haas,* 280 Minn. at 201, 159 N.W.2d at 121.

■ Colvin was charged with first-degree burglary in violation of Minn.Stat. § 609.582, subd. 1(a). Subdivision 1 provides:

Whoever enters a building without consent and with intent to commit a crime, or enters a building without consent and commits a crime while in the building, either directly or as an accomplice, commits burglary in the first degree and may be sentenced to imprisonment for not more than 20 years or to payment of a fine of not more than $35,000, or both, if:

(a) the building is a dwelling and another person, not an accomplice, is present in it when the burglar is in the building.

For a burglary conviction to stand, the state must prove that a defendant intended to commit some independent crime other than trespass. *State v. Larson,* 358 N.W.2d 668, 670 (Minn.1984).

It is undisputed that if the state had established the commission of or intent to commit another offense in the course of the OFP violation, assault or terroristic threats, for example, the independent crime element of burglary would be established. *See, e.g., State v. Van Meveren,* 290 N.W.2d 631, 632 (Minn.1980) (discussing case in which defendant had "assaultive intent"). But this case comes before us on stipulated facts, and it has been stipulated that there is no allegation that Colvin committed or attempted to commit a crime other than violation of the OFP.

Violation of an OFP, however, can be accomplished in many ways. It is the nature of the OFP violation that will determine whether the OFP violation constitutes an independent crime under the burglary statute. For example, the OFP in this case prohibited Colvin from: (1) committing acts of domestic abuse against his ex-wife; (2) having any contact with his ex-wife; (3) entering her residence; and (4) entering or calling her workplace. If Colvin had acted in contravention of either the first, second, or fourth provision, his conduct would not resemble trespass, while violation of the no-entry provision clearly does bear such a resemblance.

The state argues that Colvin committed two violations of the OFP—by entering his ex-wife's residence, he violated the no-entry prohibition in the order, and evidence of this conduct satisfied the illegal entry element of burglary. Second, by intending to contact his ex-wife in violation of the order's prohibition against "any contact" with his ex-wife, Colvin violated the order a second time. Evidence of this second method of violating the OFP, the state

contends, satisfies the intent to commit an independent crime element of burglary.

We disagree, because the district court's findings and the stipulated facts fail to support the state's allegation that Colvin intended to contact his ex-wife in violation of the OFP. The district court in its written findings of guilt specifically found that the independent crime committed by Colvin was violation of the no-entry part of the OFP. The district court stated: "In entering the building, [Colvin] intended to and did commit a crime—specifically violation of the October 14, 1998 Order for Protection which excluded [Colvin] from that building * * *." The district court made no other finding related to the no-contact provision of the order. Further, nothing in the stipulated facts—comprised of the police report, the complaint, and the parties' agreement at the pretrial hearing that there was no allegation that Colvin committed or attempted to commit any crime independent of the OFP violation—establishes that Colvin intended to contact Michelle. In fact, because the parties agreed that "there is no allegation that *any* crime independent of the OFP violation was committed or attempted to be committed" by Colvin, and because this statement refers to a single method of violating the OFP, this suggests that only one OFP violation method was contemplated during the district court proceedings. (Emphasis added.)

 On appeal, this court will accept the district court's findings of fact unless those findings are clearly erroneous. *State v. Robledo–Kinney,* 615 N.W.2d 25, 32 (Minn.2000). Findings of fact are not clearly erroneous if there is reasonable evidence to support them. *Adler v. State,* 284 Minn. 31, 36, 169 N.W.2d 233, 237 (1969). Our review of the stipulated facts leads us to conclude that the district court's factual findings with regard to the

nature of Colvin's violation of the OFP are not clearly erroneous. Because the district court found that Colvin violated the no-entry provision of the OFP, but made no other finding of additional OFP violations, we conclude that Colvin was not charged with violation of the no-contact provision of the OFP. Thus, the state's argument that Colvin's intention to violate the no-contact provision of the order was the basis for satisfying the independent crime element of burglary is unsupported by the record.

 Likewise, the dissent's venture into factfinding based on a default OFP order and petition in this case is improper. This case is before us on stipulated facts and admittedly cryptic district court findings. However, as an appellate court those findings are our only foundation. Appellate courts have no more business finding facts after a court trial than after a jury trial. Just as we must defer to a jury's findings, we are bound by the district court determination that Colvin's intent, "[i]n entering the building," was to violate the OFP, "which excluded Defendant from that building." The dissent erroneously states that we conclude that Colvin's sole intent was to enter the home. We made no such independent factual conclusion. Accordingly, the narrow issue presented is whether Colvin's violation of the no-entry provision of the OFP is sufficient to establish the independent crime element of burglary.

In *Larson,* this court held that trespass cannot serve as the crime committed or intended to be committed to establish burglary. 358 N.W.2d at 670. We explained: "To allow an intent to commit a trespass to satisfy the requirement of intent to commit a crime would mean that a mere trespasser who had no intent other than to enter or remain in a building without the consent of the owner could be convicted of burgla-

ry." *Id.* The court concluded that the state is required to "do more than establish an intent to commit the crime of trespass" to fall within the parameters of the burglary statute. *Id.*

Colvin argues that the OFP violation he committed was so similar to trespass that the same result is required here as in *Larson.* The only identifiable criminal act in both cases was the illegal entry, and in neither case is there evidence of intent to commit a crime other than illegal entry. Colvin acknowledges that the cases differ in that Colvin's entry was made illegal not simply because of the prohibition against trespass, but by operation of the valid October 14, 1998, order for protection. But Colvin contends that the OFP simply establishes the illegal entry element of burglary, not the element of intent to commit a crime independent of the illegal entry.

The court of appeals found that violation of an OFP can satisfy the independent crime element of burglary because, unlike trespass, an OFP violation is not "completely encompassed" by the unconsented entry. *State v. Colvin,* 629 N.W.2d 135, 138 (Minn.App.2001). Under the court of appeals analysis, the state is required to prove the existence of an OFP covering the residence entered, and defendant's awareness of the OFP. *Id.* Because "every burglary involves a trespass, but, not every burglary involves a violation of an order for protection," the court of appeals held that intent to violate an OFP satisfies the independent crime requirement of first-degree burglary. *Id.*

█ We conclude that violation of a no-entry provision of an OFP, like trespass, is excluded from the crimes that can be the bases for the independent crime element of burglary. Both offenses are designed to protect the interests that are invaded by the unauthorized entry that the burglar makes. Thus both trespass and violation of the no-entry provision of an OFP satisfy the illegal entry element of burglary. Further, both offenses are complete upon entry.[1] But we conclude that the same entry is insufficient to satisfy both the illegal entry element of the burglary statute and the independent-crime requirement.

█ Freed from the district court findings, the dissent paints a picture of an intruder who is more than a mere trespasser to support the conclusion that a burglary charge is appropriate. In addition to failing to give proper deference to the district court's findings, the dissent misses the point. To hold that a burglary charge here was not supported by the district court's findings is not to say that Colvin is a mere trespasser. Colvin may well have violated the OFP in ways other than mere entry; we simply have no district court findings to support that conclusion. More importantly, given our holding in *Larson,* a court adjudicating a burglary charge based on a violation of an OFP must determine that the OFP violation constituted something more than mere entry into the home in order to support the burglary charge.

In other contexts where a statute includes elements that cannot lawfully support a conviction, the conviction is invalid unless it can be conclusively shown that the improper elements did not lead to the conviction. For example, in *State v. Ihle,* 640 N.W.2d 910 (Minn.2002), we recognized that a conviction could not be based on jury instructions that did not reflect our

---

1. This is not to say that the state's proof of each offense is complete upon showing evidence of the illegal entry because, as the court of appeals noted, as to the OFP violation, the state must also prove that a valid OFP existed, and that defendant knew of it.

narrow construction of the obstruction of legal process statute—a construction that required more than simply words. *Id.* at 915. We upheld the conviction in *Ihle* because, through a special verdict, the jury found the offense was committed with force or violence or the threat thereof. *Id.* at 916–17.

Just as we required in *Ihle* a special verdict from the factfinder that obstruction included more than words, based on our decision in *Larson* a factfinder must determine that violation of an OFP involved more than a mere entry into the home to support a burglary conviction. Thus, contrary to the assertion of the dissent, we in no way hold that all violations of an OFP are the same as a trespass. We simply hold that all the factfinder found in this case was an illegal entry.

 While our holding here extends the *Larson* court's pragmatic recognition that the illegal entry that is inevitably committed during the course of a burglary cannot also be the independent crime committed while in the building, we pause to note that we are troubled by the *Larson* court's subsequent analysis. In *Larson* the defendant was charged with trespass and burglary in connection with his illegal entry into his ex-wife's residence. 358 N.W.2d at 670. The court referred to a "family relationship" between the defendant and his ex-wife, and stated that while an intent to commit a crime could be inferred merely by the presence of a stranger inside a residence, the family relationship in *Larson* (as well as defendant's prior unconsented entries in which he had committed no additional criminal conduct beyond trespass) weighed against inferring intent to commit an additional crime. *Id.* We expressly reject the view articulated therein. An ex-husband generally has no interest in his ex-wife's property, and therefore no greater right to an unconsented entry than a stranger. *Cf. State v. Evenson,* 554 N.W.2d 409, 411–12 (Minn.App.), *rev. denied* (Minn. Oct. 29, 1996) (holding that grant of an OFP deprived a husband of lawful possession of the marital home, notwithstanding ownership interest in the residence).

However, in this case we are not called to determine what intent can be inferred by Colvin's presence in his ex-wife's residence because the case comes before us on stipulated facts. Under the stipulated facts it is clear that there is no allegation that Colvin committed or intended to commit a crime other than a violation of the OFP.

Finally, we note that the legislature has created a statutory scheme to address the serious problem of domestic abuse. Minn. Stat. ch. 518B (2000). Among other remedies, the statutes address the significant danger inherent in domestic abuse by ratcheting up the penalties for repeat violations. *See* Minn.Stat. § 518B.01, subd. 14(c), (d). Unlike the crime of trespass, repeat violations of orders for protection are designated as felonies. *Id.,* subd. 14(d). A defendant convicted of violating three orders for protection in five years— such as the defendant here—is guilty of a felony level offense carrying a presumptive prison sentence. *Id.* Had the defendant been convicted of simple trespass for a third time, the crime would be a misdemeanor. Minn.Stat. § 609.605 (2000). Such disparate treatment of domestic abuse based on unauthorized entry as compared to trespass underscores the legislature's intent to treat domestic abuse seriously and severely. If the legislature chooses to sanction violation of an OFP based solely on entering a home similarly to first-degree burglary—with a presumptive sentence of 48 months for a first-time offender—it can do so by amending the appropriate statutes.

In summary, we hold that because the stipulated facts establish that there is no allegation that Colvin committed or intended to commit a crime other than the OFP violation, and because the district court specifically found that Colvin's OFP violation was a violation of the prohibition against entry onto his ex-wife's residence, Colvin's unconsented entry in violation of the OFP cannot be the basis for a burglary charge.

Reversed.

RUSSELL A. ANDERSON, Justice (dissenting).

I respectfully dissent. I disagree with the majority's conclusion that entry into a home with intent to violate an order for protection (OFP) is the equivalent of entry into a home with intent to trespass. I also disagree with the majority's characterization of the district court's written findings of fact. By improperly focusing on two short phrases in the district court's findings, the court not only ignores the fundamental finding of the court that the felony underlying the burglary was violation of the OFP and not a mere trespass, but fails to appreciate the significant difference between entry into a home and entry into a home where a person protected by an OFP resides.

The entirety of the district court's findings in this case is as follows:

1. On February 25, 1999, Defendant entered the building located at [address];

2. He did so without consent;

3. In entering the building, he intended to and did commit a crime—*specifically violation of the October 14, 1998 Order for Protection* which excluded Defendant from that building;

4. The building was a dwelling, and;

5. Another person, not an accomplice, was present in the building during some of the time that Defendant was in the building.

(Emphasis added.) The majority focuses exclusively on the phrases, "In entering the building," and "which excluded Defendant from that building" to conclude that the district court found that the independent crime committed was a violation of the "no-entry part of the order for protection." However, the district court stated that the *specific violation* was simply violation of the OFP, not the "no-entry part" of the order.

The majority strains to construe the district court order as finding a violation of only the "no-entry" aspect of the OFP so that it can characterize Colvin as a mere trespasser. In *Larson*, we stated: "[t]o allow an intent to commit a trespass to satisfy the requirement of intent to commit a crime would mean that a mere trespasser who had no intent other than to enter or remain in a building without the consent of the owner could be convicted of burglary." *State v. Larson*, 358 N.W.2d 668, 670 (Minn.1984). The majority's characterization of Colvin as a mere trespasser is not supported by the record nor is it supported by our previous case law, which permits circumstantial evidence to determine an intruder's intent.

The record in this case[1] belies the majority's characterization of Colvin as a

---

1. In the OFP that Colvin violated, the district court concluded that the petition, referred to in the order, alleges "an immediate danger of domestic abuse." Colvin did not request a hearing to refute the petition. The district court ordered Colvin not to "commit acts of domestic abuse against" Michelle. The court explained that Colvin was to stay away from the home and was not to enter the home, even if invited. Colvin was not to harm "or cause fear of harm" to Michelle or the children. According to the order, Colvin was not to

mere trespasser. This mere trespasser had twice previously broken into Michelle Colvin's home, stealing money and personal belongings. This mere trespasser had threatened violence against Michelle and their children. This mere trespasser appeared at Michelle's home every day for a 30–day period, intoxicated. This mere trespasser brought drugs and alcohol to Michelle's home. This mere trespasser brought his friends to the home, which resulted in an allegation of inappropriate contact with the children. About this mere trespasser, Michelle stated, "I am afraid."

In addition, the majority ignores the case law, acknowledged in *Larson*, that permits the consideration of circumstantial evidence to determine the intent of an unlawful intruder; that is the consideration of circumstantial evidence to determine if one is a "mere trespasser." *See, e.g., State v. Mills*, 289 Minn. 528, 529, 185 N.W.2d 276, 277 (1971) (holding that "proof of intent to commit a crime must necessarily rest on a permissible inference reasonably to be drawn from all of the facts and circumstances proved" when apprehension of the suspect occurred before anything in the building was taken or disturbed); *State v. Crosby*, 277 Minn. 22, 25, 151 N.W.2d 297, 300 (1967) ("[P]roof of intent to commit a crime in connection with proof of burglary is always one that must rest on a permissible inference from the facts proved."); *see also Larson*, 358 N.W.2d at 670; *State v. Propotnik*, 280

Minn. 556, 557, 158 N.W.2d 861, 862 (1968); *State v. Witte*, 280 Minn. 116, 118-19, 158 N.W.2d 266, 268 (1968). When consideration is given to the circumstantial evidence in this case—that is Colvin's history of domestic violence towards Michelle—a perfectly reasonable inference from Colvin's occupation of Michelle's home was that Colvin intended contact with Michelle and their children,[2] and that Colvin intended to cause Michelle and the children fear of harm. The court is unwilling to consider the circumstantial evidence, provided by the very order that Colvin violated, that Colvin intended to do more than merely enter into the home without consent. The court's analysis that Colvin is a mere trespasser is contrary to both the law and the facts.

The majority finds support for its conclusion in the stipulation that there was no allegation that Colvin committed or attempted to commit any crime independent of the OFP violation. However, while actual conduct can be indicative of intent, what is relevant to a burglary charge is the intruder's intent *at the time of entry*, not whether Colvin committed or attempted to commit a crime independent of the OFP violation once inside the home. Minn.Stat. § 609.582, subd. 1 (2000). The intent that the district court found was the simple intent to violate the OFP, not the intent that the majority surmises, the intent to enter into the home. While the record is sparse, one can easily surmise that Colvin's intent was to have contact

have "any contact" with Michelle or the children through other persons, by telephone, letter, "or in any other way." Colvin was ordered to reimburse Michelle the sum of $900 "for breakage [and] theft of money." The order advised Colvin that the Violence Against Women Act, 18 U.S.C. § 2265 (2000), made the order enforceable in all 50 states, Washington D.C., tribal lands, and U.S. Territories, and further, that Colvin must comply with the Violent Crime Control and Law En-

forcement Act of 1994, 18 U.S.C. § 922(g)(8) (2000), concerning the shipping, transporting, possession, or receiving of firearms and ammunition.

2. Indeed, one wonders why Colvin did not leave the home after not finding Michelle if, as the majority concludes, his sole intent was to enter the home.

with Michelle and the children and to cause fear of harm. In *State v. Crosby,* we affirmed a burglary conviction that relied upon circumstantial evidence of intent, stating:

> [W]hether they found what they expected to find in the building does not detract from the fact that they had an intent to commit a felony or gross misdemeanor; and if that intent existed it is sufficient, even though they did not actually find in the building what they expected to take.

277 Minn. at 26, 151 N.W.2d at 300. Our holding in *Crosby* applies with equal force here. It is irrelevant that Colvin did not find Michelle when he unlawfully entered her home, staying for two hours while drinking a beer and watching TV. His intent, as found by the district court, was to violate the OFP, which, in addition to prohibiting entry into the home, prohibited Colvin from causing fear of harm to Michelle and prohibited contact with her "in any other way."

The effect of the majority's ruling is to erase any distinction between a court-prohibited entry into a home by a person with a court-identified propensity to harm or cause fear of harm to the home-owner and a mere trespass into a building by a stranger. The two, one an offense against a person and the other an offense against property, certainly are not the same and should not be merged indiscriminately, as the majority does today.

In addition, the effect of the majority's analysis—parsing out what aspect of an OFP has been violated—requires the state to allege and the factfinder to find in burglary cases exactly what aspect of the OFP the intruder intended to violate upon entry. In other contexts, we do not require a jury to agree unanimously on exactly how a law was violated, but only to agree on the "bottom line"—that the particular violation alleged was proved beyond a reasonable doubt. *See State v. Ihle,* 640 N.W.2d 910, 918 (Minn.2002); *State v. Crowsbreast,* 629 N.W.2d 433, 439 (Minn. 2001). The majority analysis subverts this principle by requiring a jury to agree on which aspect of an OFP an intruder intended to violate where burglary is charged. This result appears to inject unnecessary complexity into a relatively simple charge.

I suspect the majority's true concern, a valid one, is whether a burglary charge, a severity level 6 offense, should be charged when the perhaps more accurate characterization of the offense is felony violation of the order for protection, a severity level 4 offense. However, if the state has misused its charging authority given the facts in this case, that action should be addressed directly rather than through a strained interpretation of the district court's straightforward ruling. The effect of the court's ruling will be to discourage the state from charging similar offenses as burglaries, perhaps contrary to legislative intent.

In sum, the majority analysis, which parses out and requires proof of the particular aspect of the OFP an intruder intended to violate upon entry in order to determine whether a burglary charge will stand, is simply unworkable. Moreover, it is unnecessary in this case, given that the district court found that the felony underlying the burglary charge was violation of the order for protection and not the *"no-entry part"* of the OFP, and given that Colvin was much more than a mere trespasser.

I would affirm.

GILBERT, Justice (dissenting).

I join in the dissent of Justice Russell A. Anderson.