**Margaret Jean ANDERSON, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. A11–330.**

Court of Appeals of Minnesota.

Oct. 24, 2011.

Review Denied Jan. 17, 2012.

David W. Merchant, Chief Appellate Public Defender, Jodie Lee Carlson, Assistant Public Defender, St. Paul, MN, for appellant.

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, MN, for respondent.

Considered and decided by SCHELLHAS, Presiding Judge; KLAPHAKE, Judge; and LARKIN, Judge.

## OPINION

KLAPHAKE, Judge.

Appellant Margaret Jean Anderson challenges her conviction for second-degree burglary, arguing that the crime of fleeing a police officer in a motor vehicle is not a sufficient independent crime, which is a required element of second-degree burglary, and that the evidence was insufficient to support her conviction.

Because the crime of fleeing a police officer in a motor vehicle is not an offense wholly encompassed by the burglary statute, it is an independent crime that may

support a second-degree burglary offense and because the evidence was sufficient to establish appellant's guilt beyond a reasonable doubt, we affirm.

## FACTS

On June 18, 2008, employees of Cub Foods in Bloomington thought that they saw appellant's juvenile companions shoplifting; the employees followed appellant and her companions to the parking lot, shouting at them to stop. Appellant and her companions jumped into a gold van and drove off at a high speed, with appellant driving. They left so quickly that the other adult member of the group, T.W., who had returned to Cub to purchase cigarettes, was left behind. R.J.H., a Cub employee, had just arrived in his black van; he agreed to follow the gold van to get a complete license plate number. R.J.H. followed the gold van into a liquor store parking lot and a Dairy Queen parking lot, but each time the group in the gold van spotted him and drove off. While continuing to follow the gold van, R.J.H. called 911. Officer Williams of the Bloomington Police Department spotted the gold van at 106th and Morgan; Williams was driving an unmarked squad car, but as he caught up with the gold van, he activated his lights and sounded his air horn. The gold van speeded up and passed several cars, then disappeared from Williams' view. But R.J.H. continued to follow the gold van and saw it turn hastily into an open garage at 106th and James; a neighbor reported hearing squealing tires. R.J.H. observed the group jump out of the van and close the garage door.

C.F.S., the owner of the house at 106th and James, was upstairs changing her two-year-old daughter's diaper. She heard a commotion downstairs and found six strangers in her house. They told C.F.S. that someone in a van was chasing them.

C.F.S. immediately called 911, but they surrounded her and told her not to call police. Finally, appellant told her that the police were chasing the group. C.F.S. was frightened and ran outside with her daughter and her telephone; she found Bloomington police surrounding her house with guns drawn. Appellant and her companions were apprehended as they left the house.

Police interviewed appellant's juvenile companions. At least one admitted that members of the group had shoplifted at Cub. All admitted that appellant was driving "crazy" and that they did not have permission to enter C.F.S.'s garage or home. At least one said that they all heard the police siren and saw the flashing lights and knew that the police were following them.

The amended charge of second-degree burglary was submitted by stipulated facts to the district court, and the district court found appellant guilty. Appellant did not file a direct appeal, but instead brought a petition for postconviction relief, alleging that the evidence was insufficient to support the conviction and that the offense of fleeing a police officer in a motor vehicle could not serve as the independent crime required for a burglary conviction. This appeal followed the postconviction court's denial of her petition.

## ISSUES

1. Did the postconviction court err by concluding that the crime of fleeing a police officer in a motor vehicle was a sufficient independent crime to support appellant's burglary conviction?

2. Is there sufficient evidence to sustain appellant's second-degree burglary conviction?

## ANALYSIS

 We review the postconviction court's findings for clear error and to determine whether there is sufficient evidence to support the findings. *Pippitt v. State,* 737 N.W.2d 221, 226 (Minn.2007). We will not reverse the postconviction court's decision absent an abuse of discretion. *Id.* But we review the postconviction court's legal determinations de novo. *Nunn v. State,* 753 N.W.2d 657, 660 (Minn. 2008). Construction of a statute presents a question of law. *Carter v. State,* 787 N.W.2d 675, 679 (Minn.App.2010). In a postconviction proceeding, the appellant has the burden of showing that she is entitled to relief. *Pippitt,* 737 N.W.2d at 226.

### Independent Crime

 Appellant was found guilty of second-degree burglary, Minn.Stat. § 609.582, subd. 2(1) (2006). The elements of this offense are (1) entering a dwelling without consent (2) and committing a crime or intending to commit a crime while in the dwelling. *Id.* Thus, the offense of second-degree burglary requires proof of an independent crime or intent to commit an independent crime upon entering a dwelling without consent. Appellant contends that the crime of fleeing a police officer in a motor vehicle, which the district court concluded was the independent crime, is not an appropriate independent crime under the burglary statute. Rather, appellant argues, based on the development of the law pertaining to burglary, that the independent crime must be one against person or property. Appellant also argues that, like trespass, the offense of fleeing a police officer in a motor vehicle was complete upon her unauthorized entry into the garage, and thus cannot serve as the independent crime.

The earliest burglary statute in Minnesota stated that a person who "shall break and enter any dwelling house in the night time, with intent to commit the crime of murder, rape, robbery, larceny, or any other felony" would be guilty of the crime of burglary. Minn.Stat. ch. 90, § 9 (1858). By 1894, the statute differentiated between first- and second-degree burglary; first-degree burglary required proof of the use of a dangerous weapon or the presence of a confederate or an actual assault; second-degree burglary required proof of intent to commit a crime in an occupied dwelling. Minn. Gen. St. § 6677, 6678 (1894). Despite amendments in 1963 and 1983, when the legislature made substantial changes to the criminal code, the crime of second-degree burglary continues to require the intent to commit, or commission of, an independent, but otherwise unspecified crime. In contrast, first-degree burglary requires proof of either the presence of a non-accomplice, the use of a dangerous weapon, or an assault. Minn.Stat. § 609.582, subd. 1 (2006).

Appellant argues that other states require the independent crime to be one against person or property, but the statutes cited by appellant include specific reference to a crime or intent to commit a crime "against person or property." *See, e.g.,* Colo.Rev.Stat. § 18–4–203 (2010); Wash. Rev.Code § 9A.52.030 (2010). The Minnesota statute does not include this language.

Minnesota courts are bound to construe words and phrases "according to their common and approved usage." Minn.Stat. § 645.08(1) (2010). "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2010); *see also State v. Jarvis,* 665 N.W.2d 518, 521–22

(Minn.2003) (construing requirement of "physical injury" in first-degree criminal sexual conduct statute). This statute is not ambiguous; although the 1859 second-degree burglary statute did specify independent crimes against person or property, that distinction has been absent from the statute since at least 1894.

However, case law interpreting the second-degree burglary statute makes clear that the underlying independent crime cannot be one "completely encompassed by the unconsented entry," which is the essential feature of the crime of burglary. *State v. Colvin*, 645 N.W.2d 449, 454 (Minn.2002) (quotation omitted). Therefore, the crime of trespass, which is unconsented entry on property, or violation of an order for protection (OFP) that is accomplished solely by making an unauthorized entry onto property, may not be used as underlying independent crimes for a burglary charge. *Id.* (violation of an OFP); *State v. Larson*, 358 N.W.2d 668, 670 (Minn.1984) (trespass).

In our view, the crime of fleeing a police officer in a motor vehicle is not wholly encompassed by the burglary statute. This offense requires proof that (1) a person used a motor vehicle to flee or to attempt to flee a peace officer acting in the lawful discharge of an official duty and (2) the person knew or should reasonably have known that he was fleeing a peace officer. Minn.Stat. § 609.487, subd. 3 (2006). "Fleeing" is defined as increasing speed, extinguishing vehicle lights, refusing to stop, or using "other means with intent to attempt to elude a peace officer following a signal given by any peace officer to the driver of a vehicle." Minn.Stat. § 609.487, subd. 1 (2006). Unlike trespass or violation of an OFP by unauthorized entry, this offense does not require proof of unlawful or unconsented entry into a dwelling.

■ Appellant argues that under the facts presented here, fleeing a police officer is like trespass because the offense was complete upon entry into the garage. She argues that burglary requires the offender to commit or attempt to commit a crime after the unauthorized entry, which she did not do. Instead, she asserts that the offense was complete once she entered the garage, so the mere fact of entry was the offense. The postconviction court found that by fully pulling the van "across the threshold of [C.F.S.'s] home and continu[ing] forward motion until the van's back wheels and bumper had cleared the boundary of the garage and the garage door could be closed behind it," appellant had committed at least a small portion of the offense of fleeing a police officer after the unauthorized entry. The offense was not complete until appellant closed the garage door, by which time she had already entered the dwelling without consent.[1] From the record, appellant intended to successfully flee a police officer by concealing the van inside the garage and by hiding inside C.F.S.'s house.

Based on a plain reading of the second-degree burglary statute, we conclude that the crime of fleeing a police officer in a motor vehicle provided an underlying independent crime for purposes of proving a second-degree burglary offense; this offense is not characterized solely by unauthorized entry and therefore, unlike trespass, can serve as the underlying independent crime. We observe no error in the district court's interpretation of the statute.

*Sufficiency of the Evidence*

■ We review the postconviction court's findings to determine whether

---

1. Appellant conceded that the attached garage is a dwelling.

.

there is sufficient record evidence to sustain the findings. *Butala v. State,* 664 N.W.2d 333, 338 (Minn.2003). We will only reverse the postconviction court's determination for an abuse of discretion. *Leake v. State,* 737 N.W.2d 531, 535 (Minn. 2007).

█ Appellant contends that the evidence is insufficient to prove that she fled a police officer in a motor vehicle because the police officer was driving an unmarked squad car; she argues that she was fleeing the black van driven by R.J.H. and did not know she was being pursued by a police officer. The postconviction court found that (1) appellant knew that Cub store employees were attempting to stop her or her companions because the employees suspected them of shoplifting; (2) appellant left at such a high rate of speed that her adult companion was left behind; (3) Officer Williams caught up with appellant's van at 106th Street and Morgan and activated his emergency lights and air horn; (4) appellant speeded up and passed other cars after Williams activated his lights; (5) one of appellant's juvenile companions stated that the occupants of appellant's car were aware that a police car was following them; (6) shortly after Williams' car caught up with appellant's van, she abruptly turned off the street she was travelling on and entered the open garage of a stranger's home; (7) appellant or another person in her van closed the garage door; and (8) when the homeowner, C.F.S., offered to call police, appellant told her not to call 911 because the police were after her. All of these findings are supported by record evidence; they are sufficient to show that appellant was aware that a police officer was attempting to stop her van. Further, the facts show that appellant fled within the meaning of the statute: she speeded up, refused to stop, and she attempted to hide her van in a stranger's garage. These actions are within the statutory definition of "flee," which includes "us[ing] other means with intent to attempt to elude a peace officer." Minn. Stat. § 609.487, subd. 1. Under these circumstances, we conclude that the evidence is sufficient to sustain the postconviction court's decision to deny appellant's petition.

### DECISION

The crime of fleeing a police officer in a motor vehicle is an independent crime for purposes of the second-degree burglary statute, when the offender enters the dwelling of another without consent in order to evade police.

**Affirmed.**