*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1849**

State of Minnesota,
Respondent,

vs.

Grady Dean Pederson,
Appellant.

**Filed August 31, 2015
Affirmed
Halbrooks, Judge**

Cottonwood County District Court
File No. 17-CR-12-150

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota; and

Nicholas A. Anderson, Cottonwood County Attorney, Windom, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Halbrooks, Judge; and Hooten, Judge.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant challenges his conviction of failing to register as a predatory offender, arguing that the evidence was insufficient to permit the jury to find that he knowingly violated the predatory-offender-registration statute. We affirm.

**FACTS**

Appellant Grady Dean Pederson is a person required to register as a predatory offender until April 15, 2020. According to the Minnesota Bureau of Criminal Apprehension's (BCA) records, Pederson's registered primary residence in March 2012 was in Fulda in Murray County. On March 27, 2012, a Windom police officer was informed that Pederson was staying at an address in Windom in Cottonwood County. Pederson had not notified authorities that he was no longer staying at his registered primary residence in Fulda. The officer spoke to Pederson on March 28, and Pederson stated that he had just starting living at the Windom address. Pederson would not tell the officer where he had been staying prior to March 28 but indicated that he had been dropped off at the Windom address on March 23.

The state charged Pederson with one count of knowingly failing to register as a predatory offender in violation of Minn. Stat. § 243.166, subd. 5(a) (2010). The state later moved to amend the complaint to add two other counts of predatory offender (knowingly violates registration requirement), and the district court granted the motion. Count one alleged that Pederson "failed to give written notice of the new primary address" at least five days before he started living there. Count two alleged that Pederson

"did not give written notice to the law enforcement authority that has jurisdiction in the area of [Pederson's] primary address that [he] is no longer living or staying at an address in that jurisdiction immediately after [he] is no longer living or staying at that address." Count three alleged that Pederson, "if homeless, did not register with the law enforcement authority that has jurisdiction in the area where [he] is staying within 24 hours after entering the jurisdiction."

At the beginning of the jury trial, Pederson stipulated to the fact that he was a predatory offender required to register during the applicable time frame of March 23 to March 27, 2012. After the conclusion of the trial testimony, the district court granted Pederson's motion to dismiss counts one and two because it found that Pederson did not have a primary residence in March 2012. The district court then submitted count three to the jury, and the jury found Pederson guilty of failing to register as a predatory offender in violation of Minn. Stat. § 243.166, subd. 3a (2010). The district court sentenced Pederson to 21 months in prison. This appeal follows.

## D E C I S I O N

Pederson argues that the state failed to prove that he knowingly violated the predatory-offender-registration statute. When addressing a sufficiency-of-the-evidence challenge, our review is limited to determining whether the evidence "was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We "view the evidence in the light most favorable to the verdict and assume that the factfinder disbelieved any testimony conflicting with that verdict." *State v. Chavarria-Cruz*, 839 N.W.2d 515, 519 (Minn. 2013) (quotation omitted). This is

3

particularly true when resolution of the matter depends on conflicting testimony "because weighing the credibility of witnesses is the exclusive function of the jury." *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980). We will not reverse a conviction when the jury, "acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt," could reasonably conclude that the appellant was proven guilty of the offense. *Bernhardt v. State*, 684 N.W.2d 465, 476 (Minn. 2004) (quotation omitted).

The elements of Pederson's failure-to-register offense are that (1) Pederson is a person required to register as a predatory offender, (2) the time period during which Pederson was required to register had not elapsed, (3) Pederson knowingly violated any of the requirements to register, and (4) Pederson's acts took place on or about March 23 to March 27, 2012, in Cottonwood County. *See* Minn. Stat. § 243.166 (2010). Pederson stipulated to the first two elements. For the third element, the state was required to prove that Pederson knowingly violated the requirement that if he lacked a primary address, he had to "register with the law enforcement authority that has jurisdiction in the area where [he] is staying within 24 hours after entering the jurisdiction." *Id.*, subd. 3a(c).

Pederson's probation officer testified at trial that he explained the registration requirements to Pederson and advised him to complete "change of information" forms when necessary. The probation officer recalled telling Pederson that he had to register a new primary address five days prior to moving but did not specifically recall telling Pederson "what needed to happen if he became homeless." Pederson's sister testified that she dropped Pederson off at a residence in Windom on March 23. She stated that he

4

did not return to her house that night and that she did not see him at his registered primary residence in Fulda between March 23 and March 27. His sister also testified that she "asked through a bunch of friends; and, yes, he was staying at the [Windom] address." A.R.S. testified that she owns the Windom residence where Pederson was dropped off on March 23, that Pederson stayed overnight from March 23 to March 24, that he was at the residence "on and off" through March 28, and that he stayed overnight "[m]aybe a night or two after" or "maybe three of the nights" between March 23 and March 28. The police officer testified that Pederson came to the Windom law-enforcement center on March 28 to register the Windom address as his new primary address.

Pederson testified that he was living at the Fulda address in October and November 2011, until he was committed for mental illness. Pederson acknowledged that the Fulda address was his registered primary address at the time of his commitment. He testified that after he was discharged from his commitment, he "was, in effect, homeless," and stayed with his sister for a few days. Contrary to the testimony of his sister and A.R.S., Pederson testified that after his sister dropped him off at the Windom residence on March 23, she came back to get him later that night, so it "wasn't like an overnight stay." Pederson stated that he did not start staying at the Windom residence until March 27 or March 28.

Viewing this evidence "in the light most favorable to the verdict and assum[ing] that the factfinder disbelieved any testimony conflicting with that verdict," *Chavarria-Cruz*, 839 N.W.2d at 519 (quotation omitted), and recognizing that "weighing the

credibility of witnesses is the exclusive function of the jury," *Pieschke*, 295 N.W.2d at 584, we conclude that the evidence was sufficient to permit the jurors to find Pederson guilty of not registering within 24 hours of entering the jurisdiction.

*"Staying"*

Minn. Stat. § 243.166, subd. 3a(c), states:

> A person who lacks a primary address shall register with the law enforcement authority that has jurisdiction in the area where the person is staying within 24 hours after entering the jurisdiction. Each time a person who lacks a primary address moves to a new jurisdiction without acquiring a new primary address, the person shall register with the law enforcement authority that has jurisdiction in the area where the person is staying within 24 hours after entering the jurisdiction.

Pederson argues that "staying" in subdivision 3a(c) means "a continuing presence for 24 hours." But this interpretation defeats the primary purpose of the predatory-offender-registration statute, which is "to create a sexual-offender registry to assist law enforcement with investigations." *State v. Ulrich*, 829 N.W.2d 429, 430 (Minn. App. 2013). Under this interpretation, persons required to register could escape from ever having to register by moving to a different jurisdiction every 23 hours. This type of loophole was not the legislature's intention. *See* Minn. Stat. § 645.16 (2014) (stating that the objective of statutory interpretation is to "ascertain and effectuate the intention of the legislature"). Even if we were to adopt Pederson's interpretation of "staying," his argument is unavailing because his sister's testimony and A.R.S.'s testimony provide sufficient evidence to permit the jurors to find that Pederson maintained a continuing

6

presence at the Windom residence for more than 24 hours between March 23 and March 27, 2012.

*"Knowingly"*

Pederson argues that even if there is sufficient evidence to prove that he violated subdivision 3a(c), there is insufficient evidence to prove that he did it knowingly. "Construction of a criminal statute is a question of law," which we review de novo. *State v. Colvin*, 645 N.W.2d 449, 452 (Minn. 2002). "A statute must be construed according to its plain language. If ambiguous, the intent of the legislature controls. A rule of strict construction applies to penal statutes, and all reasonable doubt concerning legislative intent should be resolved in favor of the defendant." *Id.* (citations omitted).

The statute provides that it is a crime to "knowingly violate[] any of [predatory-offender-registration] provisions or intentionally provide[] false information." Minn. Stat. § 243.166, subd. 5(a). No published caselaw defines "knowingly" in the registration statute. But in *State v. Gunderson*, this court interpreted "knowingly" as used in the violation-of-a-harassment-restraining-order statute and held that a person is guilty of violating that statute if he is "aware" that his conduct is "prohibited." 812 N.W.2d 156, 160-61 (Minn. App. 2012). More recently, the Minnesota Supreme Court interpreted "knowingly" in the context of the domestic-abuse-no-contact-order statute and held that the defendant must "perceive directly" that the conduct violated the statute. *State v. Watkins*, 840 N.W.2d 21, 29 (Minn. 2013). The supreme court stated that "[t]he question of whether Watkins knowingly violated the DANCO statute turns on Watkins' knowledge that his conduct violated the DANCO at the time of the offense." *Id.* at 30.

Here, Pederson received his first predatory-offender notification in 1996. Pederson then received annual address-verification notices from the BCA that stated, "Please be reminded that you must continue to advise authorities of any address changes five days prior to moving. . . . It is currently a felony to fail to register and notify proper authorities of any change in address." Pederson submitted multiple "change of address" notices over the years. In addition, Pederson signed registration advisory forms every year, from at least 2007 to 2012, that stated, "I have been notified of my duty to register in accordance with M.S. § 243.166 and/or 243.167." The form also stated:

> I understand that if I do not have a primary address I must report to the law enforcement authority with jurisdiction in the area where I will be staying within 24 hours of leaving my former primary address. . . . I understand that if I move to a new jurisdiction I must report to that law enforcement authority within 24 hours of entering the jurisdiction.

Pederson testified that, after he was discharged from his mental-health commitment, he was "homeless." He also testified that he could not return to his registered primary address in Fulda.

Pederson argues that he did not "perceive directly" that his conduct violated the statute because neither the advisory forms nor his probation officer informed him of his "general duty to register . . . with any jurisdiction in which he was staying." Pederson argues that he was only aware that he had to register if he left a primary residence or moved to another jurisdiction. Pederson contends that because he lacked a primary address and because he interpreted "move" to mean "relocate" to an "established" new

8

place, he did not "perceive directly" that he had left a primary residence in March 2012 or that he "moved" to another jurisdiction before March 28, 2012.

But based on the evidence produced at trial, including the numerous signed registration advisory forms, the evidence was sufficient to permit the jury to find that Pederson (1) knew he was required to register, (2) left his primary residence at some point prior to March 2012, (3) lacked a primary residence, (4) stayed at the Windom residence for one or more nights between March 23 and March 27, and (5) had been advised of his "duty to register in accordance with M.S. § 243.166." Therefore, there was sufficient evidence to support a finding that Pederson knew that he was required to register with law enforcement within 24 hours of entering a new jurisdiction and that he knowingly violated the provisions of subdivision 3a(c) by not registering with law enforcement between March 23 and March 27, 2012.

**Affirmed.**