*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0424**

State of Minnesota,
Respondent,

vs.

Chad Allan Mikiska,
Appellant.

**Filed January 19, 2016
Affirmed
Bjorkman, Judge**

Wadena County District Court
File No. 80-CR-11-229

Lori Swanson, Attorney General, Angela Helseth Kiese, Assistant Attorney General, St. Paul, Minnesota; and

Kyra Ladd, Wadena County Attorney, Wadena, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara L. Martin, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Worke, Judge; and Bjorkman, Judge.

# UNPUBLISHED OPINION

**BJORKMAN**, Judge

Appellant challenges his conviction of failing to register a vehicle in violation of the predatory-offender registration statute, arguing that he was not required to register the

vehicle because it was inoperable and that the state failed to prove he knowingly violated the registration requirements. We affirm.

## FACTS

Appellant Chad Allan Mikiska has been required to register as a predatory offender since 2005. From that time until March 2011, Mikiska completed verification-of-information and change-of-information forms on at least an annual basis. The forms included spaces for Mikiska to list his motor vehicles. On February 9, 2011, the Bureau of Criminal Apprehension (BCA) sent an annual verification packet to Mikiska, which included a form directing Mikiska to "register . . . any changes in [his] vehicles . . . within five days of the change." Mikiska initialed this provision and signed the form, indicating that he had been notified of and understood the registration requirements.

On March 4, 2011, Mikiska purchased a Chevrolet Blazer in Kentucky. On March 10, Wadena County Sheriff's Deputy Brian Savaloja went to Mikiska's registered address to conduct a routine compliance check. Mikiska's stepmother informed Deputy Savaloja that Mikiska had moved to Kentucky. When Deputy Savaloja spoke with Mikiska on the phone that same day, Mikiska said that he was in Kentucky and intended to move there, but would return to Minnesota to retrieve some of his personal belongings. Deputy Savaloja told Mikiska that if he moved he needed to register his new address.

Mikiska returned to Minnesota on March 13, and went to the sheriff's department to register the Blazer the next day. But before he could do so, he was arrested for failing to register a change of address. Mikiska was jailed from March 14 until September 27 for this violation. On October 3, Mikiska updated his vehicle-registration information, adding

2

a 2008 Chevrolet Colorado. On October 12, the BCA sent Mikiska another change-of-information form, which explained that Mikiska must "register . . . any changes in [his] vehicles . . . within five days of the change." Mikiska initialed that specific provision and signed the form on October 17. Between October 2011 and May 2012, Mikiska submitted several other change-of-information forms to the BCA, all of which contained spaces for his vehicle information. But Mikiska did not register the Blazer until May 1, 2012.

The state charged Mikiska with failing to register the Blazer in violation of Minn. Stat. § 243.166 (2010). He waived his right to a jury trial. He testified that he did not register the Blazer before May 2012 because it was inoperable[1] and his probation agent informed him that he was not obligated to register it if it did not work. The district court found him guilty, and imposed a 14-month prison sentence. Mikiska moved for a new trial, which the district court denied. Mikiska appeals.

## D E C I S I O N

### I. The predatory-offender registration statute required Mikiska to register the Blazer.

A predatory offender who is required to register "shall provide to the corrections agent or law enforcement authority . . . the year, model, make, license plate number, and color of all motor vehicles owned or regularly driven by the person." Minn. Stat. § 243.166, subd. 4a(a)(6). The registration statute incorporates the definition of "vehicle" contained in Minn. Stat. § 169.011, subd. 92 (2010). *Id.*, subd. 1a(f). Minn. Stat.

---

[1] Mikiska testified that the Blazer was inoperable for an unspecified period of time because of a malfunctioning thermostat.

§ 169.011, subd. 92, defines vehicle as "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway."

The interpretation of the predatory-offender registration statute is a question of law, which we review de novo. *In re Welfare of J.R.Z.*, 648 N.W.2d 241, 247 (Minn. App. 2002), *review denied* (Minn. Aug. 20, 2002). The object of interpreting laws is to ascertain and effectuate the intention of the legislature. Minn. Stat. § 645.16 (2014). "If the statutory language is plain and unambiguous, we only examine the plain meaning of the statutory language." *J.R.Z.*, 648 N.W.2d at 247. If a statute is ambiguous, the intent of the legislature controls. *State v. Colvin*, 645 N.W.2d 449, 452 (Minn. 2002). Any reasonable doubt concerning the intent of the legislature should be resolved in favor of the defendant. *Id.*

Mikiska asserts that he was not required to register the Blazer before March 2012 because it was inoperable and thus not a vehicle under the statutory definition. We are not persuaded. First, neither the predatory-offender-registration statute, nor the incorporated motor-vehicle statute, require a vehicle to be fully functional to meet the statutory definition of "vehicle." *See* Minn. Stat. §§ 169.011, subd. 92, 243.166. Indeed, the broad definition includes not only devices that are actually being used to transport people or property on highways, but also to devices that *may* do so. Minn. Stat. § 169.011, subd. 92. Vehicles that are not actually being used to transport persons or property, but *may be* upon being refueled or repaired, do not lose their status because they are temporarily inoperable.

Second, application of the predatory-offender registration statute to the Blazer is consistent with caselaw holding that inoperable vehicles are within a driver's physical control in the context of impaired-driving offenses. Courts have held that temporary

4

inoperability of a vehicle does not negate a finding of physical control, because the vehicle can regain its ability to move when it is repaired. *See State v. Starfield*, 481 N.W.2d 834, 838-39 (Minn. 1992) (stating that driver was in physical control of a vehicle stuck in a ditch); *Abeln v. Comm'r of Pub. Safety*, 413 N.W.2d 546, 548 (Minn. App. 1987) (holding that driver was in physical control of a vehicle with a dead battery). In *Abeln*, this court specified that a motor vehicle is defined as every vehicle that is self-propelled. 413 N.W.2d at 547. We rejected the argument that an inoperable vehicle ceases to meet the statutory definition simply because it is temporarily incapable of being self-propelled, reasoning that temporary inoperability can be quickly remedied. *Id*. at 547-48. Likewise, a predatory offender's vehicle is subject to the statutory registration requirements even if it is temporarily inoperable.

Third, even if we were to conclude that the statutory definition of vehicle is ambiguous, consideration of the legislature's intent supports application of the registration statute to the Blazer. The address and vehicle-registration requirements are designed to increase public safety by helping law enforcement keep track of predatory offenders. *Kaiser v. State*, 641 N.W.2d 900, 906 (Minn. 2002). Mikiska argues that registering inoperable vehicles does not further this purpose because inoperable vehicles cannot transport offenders. But as we noted above, temporarily inoperable vehicles may quickly become operable. For instance, a vehicle that is out of gas is inoperable, but loses that status upon refueling. Given the strong public-safety concerns reflected in the predatory-offender registration statute, we are not convinced that a vehicle that is not currently but may soon be used to transport persons or property falls outside of the statute's scope.

Mikiska testified that he purchased the Blazer in 2011 but did not register it until May 2012 because it needed a new thermostat. But he did not explain how this condition prevented him from driving the Blazer. He did not identify when the problem arose, what work was needed, or when the repairs were completed. At most, the thermostat issue caused the Blazer to be temporarily inoperable. Accordingly, Mikiska was required to register the Blazer.

**II.    The evidence was sufficient to prove that Mikiska knowingly violated the predatory-offender registration statute.**

When considering a sufficiency-of-the-evidence challenge, our review is limited to determining whether the evidence was sufficient to permit the fact-finder to reach the verdict that it did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We view the evidence in the light most favorable to the verdict, *State v. Chavarria-Cruz*, 839 N.W.2d 515, 519 (Minn. 2013), and we defer to the fact-finder's credibility determinations, *State v. Buckingham*, 772 N.W.2d 64, 71 (Minn. 2009).[2]

To support Mikiska's conviction, the state was required to prove that (1) Mikiska was required to register as a predatory offender; (2) the time period during which he was required to register had not elapsed; (3) he knowingly violated the vehicle-registration requirement; and (4) the violation took place on or about March 4, 2011 in Wadena County.

---

[2] Our sufficiency-of-the-evidence analysis is the same for bench trials and jury trials. *State v. Palmer*, 803 N.W.2d 727, 733 (Minn. 2011).

Minn. Stat. § 243.166, subds. 4a(a)(6), 4a(b), 5(a). Mikiska asserts that the state failed to prove the third element—that he knowingly violated the registration requirement.[3]

No published caselaw defines "knowingly violated" in the predatory-offender registration statute. But in *State v. Gunderson*, 812 N.W.2d 156, 160-61 (Minn. App. 2012), this court interpreted the term "knowingly" in the violation-of-a-harassment-restraining-order statute to mean the individual was "aware" that his conduct was "prohibited." And in interpreting "knowingly" in the domestic-abuse no-contact-order statute, our supreme court held that a person must directly perceive that his conduct violated the statute. *State v. Watkins*, 840 N.W.2d 21, 29 (Minn. 2013). Whether a violation is "knowing" depends on the defendant's knowledge that his conduct violated the statute at the time of the offense. *Id*. at 30.

Mikiska does not deny that he purchased the Blazer in March 2011 and did not register it until May 2012. Rather, he contends that the evidence shows that he simply did not know he was required to register an inoperable vehicle. We disagree. First, an owned vehicle, even if inoperable, fits squarely within the statutory language of Minn. Stat. § 243.166, subd. 4a(a)(6). Second, the record supports the district court's determination that Mikiska knew that he was required to register the Blazer within five days of purchasing

---

[3] Mikiska argues that because whether he knowingly violated the registration statute turns on his state of mind—which is generally proved through circumstantial evidence—this court should apply a heightened review standard. *See State v. Al-Naseer*, 788 N.W.2d 469, 474 (Minn. 2010) (stating that a state of mind is generally proved through circumstantial evidence); *State v. Spaeth*, 552 N.W.2d 187, 192 (Minn. 1996) (stating that convictions based on circumstantial evidence demand stricter scrutiny). Because there is direct evidence that Mikiska knew of and understood his registration requirements, we do not apply the heightened circumstantial-evidence standard.

it in March 2011. Beginning in 2005, Mikiska received annual verification-of-information forms that outlined his obligation to register his vehicle. Mikiska acknowledged receiving this information by signing every one of the numerous forms. Mikiska registered numerous vehicles pursuant to these requirements, both before and after he purchased the Blazer. He submitted multiple change-of-information forms from 2005 until 2012 that included the option for him to add or change his vehicle information. Mikiska received these forms both before and after he purchased the Blazer in 2011. And Mikiska attempted to register the Blazer on March 13, 2011, which demonstrates his knowledge of the registration requirements.

Finally, Mikiska asserts that he did not knowingly violate the registration requirements because his probation agent informed him that he was not required to register an inoperable vehicle. Mikiska did not support this testimony with confirming testimony from the agent or written documentation. The district court, acting as the fact-finder, did not find this testimony credible. We defer to such credibility determinations. *Buckingham*, 772 N.W.2d at 71.

On this record, we conclude that there is sufficient evidence to support Mikiska's conviction for violating the predatory-offender registration statute.

**Affirmed.**

8